UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

JONAS CABALLERO, on behalf of himself
and all others similarly situated,

Plaintiff,

-against-

NEW YORK STATE DEPARTMENT OF
CORRECTIONS AND COMMUNITY
SUPERVISION and ANTHONY J. ANNUCCI,

Defendants.

---

No.   9:20-cv-1470 (DNH/CFH)

**COMPLAINT AND
JURY DEMAND**

## PRELIMINARY STATEMENT

1.      The New York State Department of Corrections and Community Supervision (DOCCS) runs boot-camp-style programs that provide prisoners with intensive substance abuse treatment and let them get out of prison early.

2.      Prisoners who do not have mental health disabilities or physical disabilities are eligible to be selected by DOCCS for these special programs, as a matter of policy.

3.      Prisoners who *do* have mental health disabilities or physical disabilities are *in*eligible to be selected by DOCCS for these special programs, as a matter of policy.

4.      Despite being qualified, Plaintiff Jonas Caballero was denied access to one of these programs solely on the basis of his mental health status.

5.      He was then denied access to an alternative program solely on the basis of a physical condition.

6.     As a result, Mr. Caballero spent about nine extra months in prison—months that, had he not been disabled, he would have enjoyed in freedom.

7.     Federal law prohibits DOCCS from denying qualified people access to its programs and services on the basis of actual or perceived physical or mental disabilities.

8.     That is exactly what DOCCS is doing, openly and explicitly.

9.     DOCCS's brazen and unlawful discrimination on the basis of disability needs to stop.

## JURISDICTION AND VENUE

10.     The Court has jurisdiction under 28 U.S.C. §§ 1331 and 1332.

11.     Venue lies in the Northern District of New York under 28 U.S.C. § 1391(b) because Defendants reside in the District and because a substantial part of the events giving rise to the claim occurred in the District.

## PARTIES

12.     Plaintiff Jonas Caballero is 38 years old and resides in Verona, Pennsylvania.

13.     Defendant DOCCS is an agency of the State of New York, headquartered at 1220 Washington Avenue, Albany, New York.

14.     Defendant Anthony J. Iannucci is, and all relevant times was, the Acting Commissioner of DOCCS.  He is sued in his official capacity.

## JURY DEMAND

15.     Plaintiff demands a jury trial.

2

## FACTS

### *The Shock Incarceration Program*

16.     DOCCS' Shock Incarceration Program (in general, "Shock") "provides selected inmates a special six-month program . . . stressing a highly structured routine of discipline, intensive regimentation, exercise, and work therapy, together with substance abuse treatment, education, pre-release counseling, and life skills counseling."  DOCCS Directive No. 0086, § I (Mar. 18, 2019).

17.     In other words, Shock is essentially a boot camp.

18.     DOCCS prisoners can become eligible for Shock in one of two ways.

19.     Some are sentenced to Shock as part of the judgment imposed by their courts of conviction.

20.     Most participants in Shock are admitted by DOCCS itself.

21.     Eligible prisoners can apply to a DOCCS selection committee for participation in Shock.

22.     To be eligible, a prisoner must be under age 50, cannot have committed a violent felony offense, and must be eligible for conditional release or parole within three years, among other criteria.

23.     The selection committee makes a recommendation as to whether the applicant should be admitted to the program, which the Acting Commissioner or his designee ultimately approves or disapproves.

24.     Shock is an imperfect program, and it is a demanding and often brutal experience for the participants.

25.     But many prisoners value the structure and discipline, as well as the intensive substance abuse treatment, that Shock aims to provide.

26.     Perhaps more important, prisoners who successfully complete Shock get out of prison sooner.

27.     In New York State, persons with indeterminate sentences must generally serve five-sixths of the minimum term, and persons with determinate sentences for nonviolent felonies must generally serve five-sevenths of the sentence, before becoming eligible for release.

28.     Shock is the only program in the DOCCS system that allows prisoners to be released earlier than these default timeframes.

29.     Thus, Shock participants generally regain their freedom and return to their families and communities much earlier—often many months or years earlier—than they would if they finished their sentences in conventional prisons and became eligible for release in the ordinary course.

### *DOCCS' Facially Discriminatory Policies Deny Access to Shock on the Basis of Disability*

30.     DOCCS's policies concerning Shock and related alternative programs are discriminatory on their face.

31.     People with mental health disabilities and physical disabilities are excluded outright from these programs and/or face barriers to entry to these programs in a way that nondisabled persons do not.

32.     DOCCS classifies the mental health needs of all prisoners on a numerical scale from Level 1 (most serious) to Level 6 (least serious).[1]

---

[1]     For whatever reason, there is no Level 5.

33.     Level 1 is for persons with major mental illnesses and a history of psychiatric instability.

34.     Level 2 is for persons with major mental illnesses and a history of treatment compliance and psychiatric stability.

35.     Level 3 is for persons who do or may need short-term psychiatric medication for relatively minor disorders such as mild anxiety or depression.

36.     Level 4 is for persons who do or may need short-term psychiatric treatment, *except* psychiatric medication, for relatively minor disorders such as mild anxiety or depression.

37.     Level 6 is for persons who do not currently require mental health services.

38.     As such, any New York State prisoner who takes any psychiatric medication of any kind or who has a serious mental illness—even if that illness is being treated and managed effectively—is classified as Level 1, 2, or 3 by definition.

39.     Under DOCCS policy, prisoners at mental health Levels 1, 2, or 3 are *per se* ineligible to be admitted by DOCCS to participate in Shock.  *See* DOCCS Directive No. 0086, § III.A.2.

40.     Prisoners at mental health Levels 1, 2, or 3 can, however, be assigned to Shock by court order.  *Id*. § III.A.4.

41.     When prisoners at mental health Levels 1, 2, or 3 are sentenced to Shock by a court, DOCCS policy is to place such court-ordered individuals into the first six-month phase of its Comprehensive Alcohol and Substance Abuse Treatment program (CASAT) or its Alcohol and Substance Abuse Treatment Program (ASAT).

42.     In doing so, DOCCS demonstrates its view that the first phase of CASAT is functionally equivalent to Shock, and that placement in the first phase of CASAT is sufficient to comply with a judicial order of assignment to Shock.

43.     That people who have serious mental illnesses or take psychiatric medication are eligible to be sent to Shock or functionally equivalent alternatives by court order, but cannot access Shock though the internal DOCCS process, is significant for two reasons.

44.     First, it constitutes disability discrimination on its face.  People without mental health disabilities have two paths into Shock or similar alternative programming: court order or assignment by DOCCS.  People with mental health disabilities have only one path: court order.  People with mental health disabilities face a barrier to accessing Shock that is specifically designed to and has the effect of excluding them from DOCCS programs and services.

45.     Second, it shows that the mere fact of a serious mental health diagnosis or a need for psychiatric medication does not prohibit a person from successfully participating in and completing Shock or Shock-like programming.

46.     In other words, it shows that DOCCS's exclusion of otherwise qualified Shock applicants at mental health Levels 1, 2, or 3 is not necessary to achieve the purposes of Shock, and that DOCCS can reasonably accommodate such persons' participation, including by placing them in the first phase of CASAT.

47.     On information and belief, DOCCS's purported justification for excluding all prisoners at Levels 1, 2, or 3 from Shock is not that such persons are categorically unqualified or unable to participate in Shock (although some of course may be, on an individualized basis).

48. Instead, on information and belief, DOCCS excludes all prisoners at mental health Levels 1, 2, or 3 from Departmental Shock on the purported basis that its Shock facilities do not have the capacity to provide adequate mental health care or administer psychiatric medication.

49. This is not a reasonable basis to deny an entire class of disabled prisoners access to a valuable and highly coveted program that can accelerate their release from prison and re-entry into society, particularly given the prevalence of telehealth care throughout the DOCCS system.

50. DOCCS's denial of access to Shock to prisoners with mental health disabilities is also illogical.

51. Substance abuse treatment and counseling is an integral part of Shock, and it is well known that mental health disorders are a significant driver of addiction.

52. Categorically excluding persons at mental health levels 1, 2, or 3 from Shock therefore closes off the program to some of the people who need it most.

53. Prisoners' knowledge that they will be ineligible for Shock if they are on psychiatric medication can also provide a perverse incentive to discontinue needed treatment to gain access to the program.[2]

---

[2]     *See* Keri Blakinger, *New York Prisons Offer 'Tough Love' Boot Camp Programs. But Prisoners Say They're 'Torture' and 'Hell.'*, The Appeal, May 21, 2019, https://theappeal.org/new-york-prisons-offer-tough-love-boot-camp-programs-but-prisoners-say-theyre-torture-and-hell (describing the experience of prisoner Julie Sharp, who went off anti-anxiety medication to gain admission to a shock program).

54.     According to DOCCS's own records, between January 2015 and May 2019, DOCCS screened out 3,273 otherwise eligible prisoners from the Shock program for mental health reasons.

55.     The overwhelming majority were not court-ordered to participate in Shock, but were instead denied after applying through DOCCS's departmental processes.[3]

### *A Prisoner with an Exceptional Life*

56.     Plaintiff Jonas Caballero grew up in the Pittsburgh area.

57.     He worked as an emergency medical technician after high school.

58.     After the September 11 attacks, which included the downing of United Flight 93 in Western Pennsylvania, Mr. Caballero became interested in Middle East policy.

59.     He worked as a human rights activist in the occupied Palestinian Territories, where he was shot in the leg and hip with rubber-coated steel bullets by the Israeli military during a nonviolent demonstration.

60.     After returning to the United States, Mr. Caballero enrolled at the University of Pittsburgh, from which he graduated *summa cum laude*.

61.     Mr. Caballero obtained a master's degree in Middle Eastern Studies from the University of Cambridge in the United Kingdom while studying on a Fulbright Scholarship.

62.     He returned to live in New York in 2012.

---

[3]     DOCCS also discriminates in admissions to Shock on the basis of physical disabilities.  *See generally* Complaint, *Raymond v. DOCCS*, No. 9:20-CV-1380 (N.D.N.Y. Nov. 6, 2020).

63.   He was diagnosed with depression and with post-traumatic stress disorder (PTSD) in connection with violence he witnessed while working in Palestine.

64.   Mr. Caballero's use of recreational drugs in connection with his club-going escalated into a serious drug addiction.

65.   He began selling drugs to feed his addiction, leading to his arrest and 2018 conviction on nonviolent felony drug charges.

### *DOCCS Denies Plaintiff Access to Shock and Similar Alternative Programming on the Basis of Actual or Perceived Disabilities*

66.   Mr. Caballero was admitted to DOCCS custody on August 28, 2018, with a determinate sentence of three years.

67.   Mr. Caballero promptly applied to participate in Shock.

68.   At the time, Mr. Caballero was taking Zoloft and Remeron and was therefore classified at mental health Level 3.

69.   On September 14, 2018, DOCCS denied Mr. Caballero admission to Shock on the sole basis of his mental health status.

70.   Mr. Caballero was denied access to Shock pursuant to Directive No. 0086, signed and implemented by Defendant Annucci.

71.   As DOCCS later informed Mr. Caballero in response to his grievances: "Inmates with a mental health level of 1, 2 or 3 are precluded from transfer to Lakeview Shock incarceration program. . . . [Y]ou are currently mental health level 3."

72.   Mr. Caballero was otherwise eligible and qualified for Shock because he was between the ages of 18 and 49, was less than three years from eligibility for parole, was not convicted of a violent felony offense, and did not have any open warrants or detainers.

73.    Mr. Caballero was then considered by DOCCS for admission to CASAT.

74.    In the intervening months since his denial of admission to Shock, Mr. Caballero had developed rectal bleeding and other physical symptoms in connection with a diagnosis of pre-anal cancer.

75.    As a result of his physical symptoms, Mr. Caballero was removed from his normal work assignment in the mess hall.

76.    On January 2, 2019, DOCCS denied Mr. Caballero's application to CASAT on the basis of "medical" reasons.

77.    Mr. Caballero sought additional information about the denial of admission to CASAT.  In response, a counselor wrote to Mr. Caballero: "Health Services indicated that you are not medically suitable for work at this time.  CASAT has a work release component at the successful completion of the drug treatment.  You would be unable to meet that expectation and therefore central office denied your application."

78.    Mr. Caballero then provided a doctor's note showing that he was physically able to perform sedentary work and sought a reasonable accommodation of being allowed to perform sedentary work in the event his physical capabilities were limited.

79.    DOCCS did not respond to, and thus constructively denied, Mr. Caballero's request for a reasonable accommodation.

80.    Mr. Caballero was released on parole on December 16, 2019.

81.    Had Mr. Caballero been admitted to Shock in or around September 14, 2018, he would have been released from prison in or around mid-March 2019.

82.    Being discriminated against on the basis of his actual or perceived mental health and/or physical disabilities caused Mr. Caballero mental and emotional distress, including anger, humiliation, and injury to dignity.

### *Class Allegations*

83.     Plaintiff brings this action on behalf of, and seeks certification of, the following class of persons under Federal Rule of Civil Procedure 23(b)(3): All persons who were (1) were incarcerated in a New York state prison; (2) not judicially ordered to be enrolled in the Shock Incarceration Program; (3) disqualified from the Shock Incarceration Program on the basis that they were classified as mental health Level 1, 2, or 3; (4) otherwise eligible to enroll in the Shock Incarceration Program; and (5) not given an alternative six-month pathway to early release from prison.

84.     On information and belief, the class has thousands of members, making joinder impracticable.

85.     There are questions of law or fact common to the class, including but not limited to:

> a.     Does DOCCS's policy of excluding persons at mental health Levels 1, 2, or 3 from Shock have the effect of discriminating against persons with mental health disabilities?
>
> b.     Does DOCCS's policy of excluding persons at mental health Levels 1, 2, or 3 from Shock tend to prevent persons with mental health disabilities from accessing programs or services?
>
> c.     Does DOCCS's policy violate the Rehabilitation Act?
>
> d.     Does DOCCS's policy violate the Americans with Disabilities Act?
>
> e.     Could DOCCS reasonably accommodate prisoners with mental health Levels 1, 2, or 3 by offering another pathway toward earned early release?

86. Mr. Caballero's claims are typical of the claims of the class, as Mr. Caballero was denied access to Shock under a straightforward application of DOCCS policy and had his incarceration prolonged as a result.

87. Mr. Caballero is not merely an adequate representative of the class, but an outstanding one. Mr. Caballero has multiple advanced degrees, is beginning the process of applying to law school, and is fully informed of and embraces his obligations as a putative class representative.

88. Mr. Caballero is represented by attorneys from Kaufman Lieb Lebowitz & Frick LLP who have an extensive background in prisoners' rights and civil rights litigation, including class actions.

89. On information and belief, DOCCS maintains records identifying which prisoners are denied access to Shock on the basis of being classified as mental health Levels 1, 2, or 3, thereby making the composition of the class readily ascertainable.

90. Questions of law and fact common to class members predominate, and a class action is superior to other methods for adjudicating the controversy because, among other reasons:

    a.    Given class members' limited resources, class members' limited access to counsel, and the legal complexity of the claims, class members are unlikely to prosecute separate actions in large numbers;

b.  Mr. Caballero is aware of no other pending damages actions filed by class members, but this action is related to two other cases raising similar issues pending before this Court;[4]

c.  Litigation concerning the legality of DOCCS's policy and its application to thousands of prisoners over the course of several years should be concentrated in a single forum; and

d.  Because many if not most class members will still be incarcerated or will be on parole or supervised release, the difficulties in administering a class action are minimal, as DOCCS is readily equipped to locate class members and provide them with any required notice.

### CAUSES OF ACTION

**FIRST CLAIM**
**Exclusion from Shock**
**29 U.S.C. § 794 – Rehabilitation Act**
*On Behalf of Plaintiff and the Putative Class*

91.  Plaintiff repeats and realleges all the preceding paragraphs.

92.  Under the Rehabilitation Act, 29 U.S.C. § 794(a), "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ."

---

[4]   *Raymond v. DOCCS*, No. 9:20-CV-1380 (N.D.N.Y.); *Goodall v. DOCCS*, No. 19-CV-1359 (N.D.N.Y.).

93.     An entity receiving federal financial assistance may not, on the basis of an individual's disability, deny him the opportunity to participate in a service or program offered to other inmates, or deny him "an equal opportunity to achieve the same benefits that others achieve in the program or activity."  28 C.F.R. § 42.503(b)(1)(i)-(ii).

94.     An entity receiving federal financial assistance may not use "criteria or methods of administration that either purposely or in effect discriminate on the basis of handicap, or defeat or substantially impair accomplishment of the objectives of the recipient's program or activity with respect to handicapped persons."  28 C.F.R. § 42.503(b)(3).

95.     At the relevant time, Plaintiff was handicapped and had a disability within the meaning of the Rehabilitation Act, specifically PTSD and depressive disorder.

96.     DOCCS received federal financial assistance and is subject to the Rehabilitation Act.

97.     At all relevant times, Plaintiff met the eligibility criteria for Shock, other than his mental health disability.

98.     Defendants' policy of excluding from Shock all otherwise eligible prisoners at mental health Level 1, 2, or 3 "purposely or in effect discriminate[s] on the basis of handicap" and "defeat[s] or substantially impair[s] accomplishment of the objectives of the recipient's program or activity."  28 C.F.R. § 42.503(b)(3).

99.     Defendants excluded Plaintiff from Shock and denied him the benefits of the program, including but not limited to early release from prison, on the basis of one or more disabilities—specifically, his PTSD and/or depressive disorder that led to his Level 3 mental health classification.

100.    Defendants' failure to provide Plaintiff with a reasonable accommodation, such as admission to a Shock equivalent program, denied him "an equal opportunity to achieve the same benefits that others achieve" in the Shock program.  28 C.F.R. § 42.503(b)(1)(ii).

101.    As a proximate result of Defendants' violations of the Rehabilitation Act, Plaintiff suffered the damages hereinbefore alleged.

**SECOND CLAIM**
**Exclusion from Shock**
**42 U.S.C. § 12131 *et seq.* – Title II of the Americans with Disabilities Act**
*On Behalf of Plaintiff and the Putative Class*

102.    Plaintiff repeats and realleges all the preceding paragraphs.

103.    Under the Americans with Disabilities Act (ADA), "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.

104.    A public entity may not, on the basis of an individual's disability, deny him the opportunity to participate in a service or program offered to other inmates, or deny him the opportunity to "gain the same benefit, or to reach the same level of achievement as that provided to others."  28 C.F.R. § 35.130(b)(1).

105.    "A public entity may not, directly or through contractual or other arrangements, utilize criteria or methods of administration: (i) That have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability; (ii) That have the purpose or effect of defeating or substantially impairing accomplishment of the objectives of the public entity's program with respect to individuals with disabilities . . . ."  *Id.* § 35.130(b)(3).

106.    Further, a public entity is barred from using "eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any service, program, or activity, unless such criteria can be shown to be necessary for the provision of the service, program, or activity being offered."  *Id*. § 35.130(b)(8).

107.    Finally, public entities are required to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability. . . ." 28 C.F.R. § 35.130(b)(7)(i).

108.    At all relevant times, Plaintiff's PTSD and/or depressive disorder constituted a disability within the meaning of the ADA.  42 U.S.C. § 12131(1)(A).

109.    DOCCS is a "public entity" under the ADA.

110.    At all relevant times, Plaintiff met the eligibility criteria for Shock, other than his mental health disability.

111.    Defendants' policy of excluding from Shock all otherwise eligible prisoners at mental health Level 1, 2, or 3 "screen[s] out or tend[s] to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying" the SIP and/or its benefits.  28 C.F.R. § 35.130(b)(8).

112.    The exclusion of inmates with a mental health classification of 1, 2, or 3 is not necessary for the administration of Shock.

113.    The exclusion of inmates with a mental health classification of 1, 2, or 3 is not rationally related to any legitimate non-discriminatory purpose.

114.    Defendants excluded Plaintiff from Shock and denied him the benefits of the program, including but not limited to early release from prison, on the basis of one

or more disabilities—specifically, his PTSD and/or depressive disorder that led to his Level 3 mental health classification.

115.    Defendants failed provide Plaintiff with a reasonable accommodation to avoid discriminating against Plaintiff on the basis of his disability, such as admission to CASAT or a Shock-equivalent program.

116.    In doing so, Defendants violated Plaintiff's procedural and substantive due process rights protected by the Fifth and Fourteenth Amendments to the United States Constitution.  In creating the Shock Incarceration Program, Defendants created a liberty interest in the opportunity to earn early release from incarceration. Plaintiff has been denied that opportunity and thus deprived of liberty based on discriminatory criteria and without being provided any meaningful opportunity to contest Defendants' refusal to admit him or prove his qualifications, including by conducting an individual assessment of Plaintiff's health status and/or offering him a reasonable accommodation. Defendants' conduct in discriminating against Plaintiff and denying him the opportunity to participate in the SIP without any individualized assessment was willful, malicious, and conscience-shocking.

117.    As a direct and proximate result of Defendants' violations of Title II of the ADA, Plaintiff suffered the damages hereinbefore alleged.

**THIRD CLAIM**
**Exclusion from CASAT**
**29 U.S.C. § 794 – Rehabilitation Act**
*On Behalf of Plaintiff Only*

118.    Plaintiff repeats and realleges all the preceding paragraphs.

119.    Under the Rehabilitation Act, 29 U.S.C. § 794(a), "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his

disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ."

120.   An entity receiving federal financial assistance may not, on the basis of an individual's disability, deny him the opportunity to participate in a service or program offered to other inmates, or deny him "an equal opportunity to achieve the same benefits that others achieve in the program or activity."  28 C.F.R. § 42.503(b)(1)(i)-(ii).

121.   An entity receiving federal financial assistance may not use "criteria or methods of administration that either purposely or in effect discriminate on the basis of handicap, or defeat or substantially impair accomplishment of the objectives of the recipient's program or activity with respect to handicapped persons."  28 C.F.R. § 42.503(b)(3).

122.   At the relevant time, Plaintiff was physically handicapped and/or regarded as handicapped under the Rehabilitation Act.   Specifically, he was suffering from physical symptoms, including bleeding, of pre-anal cancer.

123.   DOCCS received federal financial assistance and is subject to the Rehabilitation Act.

124.   At all relevant times, Plaintiff met the eligibility criteria for CASAT, other than his physical handicap or being regarded as having a handicap.

125.   Defendants excluded Plaintiff from CASAT and denied him the benefits of the program, including but not limited to early release from prison, on the basis of his physical disability.

126.   Defendants' rejection of Plaintiff from CASAT on the basis of his handicap and/or being regarded as handicapped "purposely or in effect discriminate[ed] on the

basis of handicap" and "defeat[ed] or substantially impair[ed]" accomplishment of the objectives of the recipient's program or activity."  28 C.F.R. § 42.503(b)(3).

127.     Defendants' failure to provide Plaintiff with a reasonable modification, such as admission to CASAT with a sedentary work requirement, denied him "an equal opportunity to achieve the same benefits that others achieve" in CASAT.  28 C.F.R. § 42.503(b)(1)(ii).

128.     As a proximate result of Defendants' violations of the Rehabilitation Act, Plaintiff suffered the damages hereinbefore alleged.

**FOURTH CLAIM**
**Exclusion from CASAT**
**42 U.S.C. § 12131 *et seq.* – Title II of the Americans with Disabilities Act**
*On Behalf of Plaintiff Only*

129.     Plaintiff repeats and realleges all the preceding paragraphs.

130.     Under the Americans with Disabilities Act (ADA), "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.

131.     A public entity may not, on the basis of an individual's disability, deny him the opportunity to participate in a service or program offered to other inmates, or deny him the opportunity to "gain the same benefit, or to reach the same level of achievement as that provided to others."  28 C.F.R. § 35.130(b)(1).

132.     "A public entity may not, directly or through contractual or other arrangements, utilize criteria or methods of administration: (i) That have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability; (ii) That have the purpose or effect of defeating or substantially impairing

19

accomplishment of the objectives of the public entity's program with respect to individuals with disabilities . . . ." *Id.* § 35.130(b)(3).

133.    Further, a public entity is barred from using "eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any service, program, or activity, unless such criteria can be shown to be necessary for the provision of the service, program, or activity being offered." *Id.* § 35.130(b)(8).

134.    Finally, public entities are required to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability. . . ." 28 C.F.R. § 35.130(b)(7)(i).

135.    At all relevant times, was disabled or regarded as disabled within the meaning of the ADA.  42 U.S.C. § 12131(1)(A).

136.    DOCCS is a "public entity" under the ADA.

137.    At all relevant times, Plaintiff met the eligibility criteria for CASAT, other than his physical disability or being regarded as having a physical disability.

138.    Defendants' policy of excluding from CASAT all otherwise eligible prisoners whose physical disability may exclude them or lead others to believe they are excluded from certain manual labor "screen[s] out or tend[s] to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying" the SIP and/or its benefits.  28 C.F.R. § 35.130(b)(8).

139.    The exclusion of inmates with physical disabilities is not necessary for the administration of CASAT.

140.    The exclusion of inmates with physical disabilities is not rationally related to any legitimate non-discriminatory purpose.

141.    Defendants excluded Plaintiff from CASAT and denied him the benefits of the program, including but not limited to early release from prison, on the basis of his physical disability and/or on the basis of being regarded as disabled.

142.    Defendants failed to make a reasonable accommodation to their policies or practices, such as admission to CASAT with a sedentary work requirement, to avoid discriminating against Plaintiff on the basis of his disability.

143.    In doing so, Defendants violated Plaintiff's procedural and substantive due process rights protected by the Fifth and Fourteenth Amendments to the United States Constitution.  In creating CASAT, Defendants created a liberty interest in the opportunity to earn early release from incarceration. Plaintiff has been denied that opportunity and thus deprived of liberty based on discriminatory criteria and without being provided any meaningful opportunity to contest Defendants' refusal to admit him or prove his qualifications, including by conducting an individual assessment of Plaintiff's health status and/or offering him a reasonable accommodation. Defendants' conduct in discriminating against Plaintiff and denying him the opportunity to participate in the SIP without any individualized assessment was willful, malicious, and conscience-shocking.

144.    As a direct and proximate result of Defendants' violations of Title II of the ADA, Plaintiff suffered the damages hereinbefore alleged.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court grant the following relief:

A.      An order certifying the above-mentioned class under Fed. R. Civ. P.

23(b)(3);

B.      Compensatory (or if not, nominal) damages in an amount to be

determined at trial on behalf of himself and class members;

C.      Reasonable costs and attorneys' fees under applicable law:

D.      Pre- and post-judgment interest to the fullest extent permitted by law; and

E.      Any additional relief the Court deems just and proper.

Dated:       December 2, 2020
             New York, New York

                                        KAUFMAN LIEB LEBOWITZ
                                        & FRICK LLP


                                        _____/s/_____
                                        Douglas E. Lieb
                                        Alison Frick*

                                        10 E. 40th Street, Suite 3307
                                        New York, New York 10016
                                        (212) 660-2332
                                        dlieb@kllf-law.com

                                        *Counsel for Plaintiff*

                                        *\* Application for NDNY
                                          admission forthcoming*