UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
JONAS CABALLERO, on behalf of
himself and all others similarly
situated,

    Plaintiff,

 -v-         9:20-CV-1470

NEW YORK STATE DEPARTMENT
OF CORRECTIONS AND
COMMUNITY SUPERVISION,

    Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| APPEARANCES: | OF COUNSEL: |
|---|---|
| KAUFMAN LIEB LEBOWITZ & FRICK LLP<br>Attorneys for Plaintiff<br>10 East 40th Street<br>Suite 3307<br>New York, NY 10016 | DOUGLAS EDWARD LIEB, ESQ.<br>ALISON E FRICK, ESQ. |
| NEW YORK STATE ATTORNEY<br>GENERAL – ALBANY<br>Attorneys for Defendant<br>The Capitol<br>Albany, NY 12224 | DENISE P. BUCKLEY, ESQ.<br>Ass't Attorney General |

DAVID N. HURD
United States District Judge

# MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

On December 2, 2020, plaintiff Jonas Caballero ("Caballero" or "plaintiff"), a former inmate of the New York State Department of Corrections and Community Supervision ("DOCCS" or "defendant"), filed a four-count complaint in this district alleging: (I) a violation of the Rehabilitation Act, 29 U.S.C. § 794, for denying him from participating in defendant's Shock Incarceration Program ("Shock"); (II) a violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131-65 for the same; (III) a violation of the Rehabilitation Act for denying him from participating in defendant's Comprehensive Alcohol and Substance Abuse Treatment program ("CASAT"); and (IV) a violation of Title II of the ADA for the same.

On March 29, 2021, DOCCS filed the present motion, seeking to dismiss all of Caballero's claims against it pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1) and (6). The motion has been fully briefed and will be considered on the basis of the submissions without oral argument.

## II. BACKGROUND

DOCCS's full title contains a certain amount of jargon, but in practice defendant manages New York's prison system, including Greene Correctional

Facility ("Greene") in Coxsackie, New York.[1] Greene Correctional Facility Overview, DOCCS, https://doccs.ny.gov/location/greene-correctional-facility. Caballero was an inmate at Greene from August 28, 2018 until December 16, 2019. Compl. ¶ 65. Inmate Lookup, DOCCS, http://nysdoccslookup.doccs.ny.gov/GCA00P00/WIQ3/WINQ130.

In the process of managing prisons, DOCCS offers special programs to some of its inmates. Compl. ¶ 1. Among these is Shock, which provides selected prisoners with a highly-structured routine of discipline, intensive regimentation, exercise, and work therapy over a six-month program. *Id.* ¶ 15. Additionally, this rigorous program includes substance abuse treatment, education, and pre-release and life skills counseling. *Id.* Perhaps most important of all, successfully completing Shock entitles prisoners to early release. *Id.* ¶ 1.

There are two routes into Shock. Compl. ¶ 17. The first is to be sentenced as part of the sentencing court's judgment. *Id.* ¶ 18. The second is to apply to a DOCCS selection committee who chooses Shock participants among eligible candidates. *Id.* ¶ 20. To be eligible to apply, inmates must be under

---

[1] Generally, the factual allegations are taken from Caballero's amended complaint, Dkt. No. 18 ("Compl."), and are assumed true for the purpose of resolving defendant's motion to dismiss. The Court nevertheless draws on materials outside the complaint solely for the purposes of providing a complete narrative. The Court will not rely on extraneous materials in considering the merits of defendant's motion

3

the age of fifty, cannot have committed a violent felony offense, and must be eligible for conditional release or parole within three years. *Id.* ¶ 21.

Generally, New York State deems an inmate "eligible for release" after he serves five-sixths of his minimum term of imprisonment if his sentence was indeterminant, while those with determinate sentences for non-violent felonies must serve five-sevenths of the sentence before being eligible for release. Compl. ¶ 26. Shock is the only program in the DOCCS system that makes inmates eligible for release earlier than these default timeframes. *Id.* ¶ 27.

However, in addition to the eligibility criteria listed above, DOCCS also takes an inmate's mental health into consideration when determining whether to place him into Shock. *See* Compl. ¶ 30. Defendant classifies the mental health needs of all prisoners in its care as follows:

> Level 1 is for persons with major mental illnesses and a history of psychiatric instability. . . . Level 2 is for persons with major mental illnesses and a history of treatment compliance and psychiatric stability. . . . Level 3 is for persons who do or may need short-term psychiatric medication for relatively minor disorders such as mild anxiety or depression. . . . Level 4 is for persons who do or may need short-term psychiatric treatment, except psychiatric medication, for relatively minor disorders such as mild anxiety or depression.[2] . . . Level 6 is for persons who do not currently require mental health services.

---

[2] Level 5 does not exist.

4

*Id.* ¶¶ 32-36. Inmates at Levels 1, 2, or 3 are per se ineligible to participate in Shock. *Id.* ¶ 38.

Caballero entered DOCCS custody after being convicted of non-violent felony drug charges. Compl. ¶¶ 65-66. Those charges resulted in a determinate, three-year sentence. *See id.* ¶ 66.

Leading up to his incarceration, Caballero allegedly suffered from pre-existing mental health conditions related to his time as a human-rights activist. Compl. ¶ 58. Specifically, plaintiff claims that he was diagnosed with depression and post-traumatic stress disorder ("PTSD"). *Id.* ¶ 62. As a result, he asserts he has difficulty sleeping and suffers from severe trauma-related nightmares several times a week. *Id.* ¶¶ 68-69. Even though medical professionals increased his anti-anxiety medicine by 200 percent while he was incarcerated, plaintiff alleges that he continues to suffer from recurring nightmares resulting in night sweats and heart palpitations one to two times per week. *Id.* ¶¶ 74-78.

Additionally, Caballero alleges that he has difficulty concentrating. Compl. ¶ 68. He claims to startle easily and be hyper-vigilant of his surroundings, which he asserts makes it difficult for him to focus. *Id.* ¶ 80. He also alleges that he suffers from intrusive thoughts, including flashbacks. *Id.* ¶ 81. This apparently impacts his ability to concentrate for long periods of time, including in the classroom and during social interactions. *Id.* ¶ 79.

When Caballero was admitted into DOCCS custody, he was allegedly taking Zoloft and Remron to address his PTSD. Compl. ¶¶ 65, 67. As a result, he was classified at Level 3 under defendant's mental health scheme. *Id.* ¶ 67.

It would appear that the criminal court did not sentence Caballero to Shock, so plaintiff instead tried his hand at the other road into the program and applied to participate soon after arriving at Greene. *See* Compl. ¶¶ 66-67. On September 14, 2018, plaintiff alleges that DOCCS turned his application down. *Id.* ¶ 84. Defendant subsequently informed plaintiff that his Level 3 mental health classification precluded his participation in Shock. *Id.* ¶86. Plaintiff alleges that he otherwise fit every criterion for Shock admission. *Id.* ¶ 87.

After being rejected from Shock, Caballero sought admission to CASAT. Compl. ¶¶ 40, 88. CASAT is an alternate program that, plaintiff alleges, answers DOCCS's dilemma when faced with an inmate sentenced to Shock by his court of conviction, but who is also categorically ineligible for Shock by rating out at mental health Level 1, 2, or 3. *Id.* ¶¶ 19, 39-40. In other words, defendant sends inmates sentenced to—but ineligible for—Shock into CASAT instead. *Id.* ¶ 41. According to plaintiff, defendant's interchangeable treatment of the two programs amounts to an admission that CASAT is "functionally equivalent to Shock." *Id.*

While Caballero's CASAT application was pending, though, he was diagnosed with anal dysplasia, a pre-cancerous condition. Compl. ¶¶ 89-90. Previously, plaintiff had worked in Greene's mess hall, but DOCCS removed him from this assignment, apparently due to his dysplasia. *Id.* ¶ 92. Perhaps predictably, defendant also denied plaintiff's CASAT application on January 2, 2019, citing "medical" reasons. *Id.* ¶ 95. When plaintiff asked for an explanation, defendant clarified that he was classified as not medically suitable for work, and because CASAT involves a work-release component after the successful completion of the drug treatment he would not be able to fulfill the course. *Id.* ¶ 96.

Caballero responded by requesting an accommodation to allow him to perform sedentary work during the work release portion of CASAT, and submitted a doctor's note to support that he was physically capable of seated tasks. Compl. ¶ 97. DOCCS never responded to plaintiff's doctor's note or his request for a reasonable accommodation. *Id.* ¶ 98.

Caballero was released from DOCCS custody on December 16, 2019. Compl. ¶ 99. He alleges that if he had been allowed to participate in Shock, he would have been released around mid-March of 2019. *Id.* ¶ 100. Plaintiff claims that he was kept in prison for roughly nine extra months because defendant discriminated against him on the basis of his disabilities by denying him access to Shock and CASAT. *Id.* ¶ 6. As a consequence, plaintiff

7

brought a potential class action complaint against defendant alleging disability discrimination under both the ADA and the Rehabilitation Act for denying him from participating in both programs. Dkt. 1. Defendant moved to dismiss that complaint in its entirety and deny class certification on March 29, 2021. Dkt. 21.

## III. LEGAL STANDARD

### A. Subject-Matter Jurisdiction

To establish subject-matter jurisdiction, a plaintiff must prove by a preponderance of the evidence that the district court has either statutory or constitutional power to adjudicate the case before it. *Aurecchione v. Schoolman Transp. Sys., Inc.* 426 F.3d 635, 638 (2d Cir. 2005); *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). When determining whether that burden has been met, all ambiguities and inferences should be drawn in plaintiff's favor. *Aurecchione*, 426 F. at 638.

Additionally, subject matter jurisdiction is a threshold issue and when a party moves to dismiss under both Rule 12(b)(1) and 12(b)(6), the court must address the Rule 12(b)(1) motion first. *Saleh v. Holder*, 84 F. Supp. 3d 135, 137-38 (E.D.N.Y. 2014). Only once the court finds that plaintiff has met his burden under Rule 12(b)(1), is consideration of the motion pursuant to Rule 12(b)(6) proper.

## B. Failure to State a Claim

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must present a claim for relief that is plausible on its face. *Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009). When assessing the plausibility of a plaintiff's complaint, the court should construe the complaint liberally and draw all reasonable inferences in plaintiff's favor. *Ginsburg v. City of Ithaca*, 839 F. Supp. 2d 537, 540 (N.D.N.Y. 2012). As long as a plaintiff's complaint creates a reasonable inference that the defendant is liable for the misconduct alleged, denial of a motion to dismiss is proper. *Ashcroft*, 556 U.S. at 678.

## IV. DISCUSSION

DOCCS' motion to dismiss takes three tacks. First, defendant argues that this Court lacks jurisdiction over Caballero's Fifth and Fourteenth Amendment claims because those claims are barred by sovereign immunity under the Eleventh Amendment. Second, defendant claims that plaintiff has not adequately alleged that he is disabled within the meaning of the ADA or the Rehabilitation Act. Third, defendant argues that even if plaintiff's claims survive, his attempt at class certification must be denied.

### A. Caballero's Alleged Fifth and Fourteenth Amendment Claims

DOCCS argues that Caballero has pled claims arising from violations of his Fifth and Fourteenth Amendment rights, and that such claims are barred by Eleventh Amendment immunity.

The Eleventh Amendment places limitations on a district court's subject-matter jurisdiction, and "generally bars suits in federal court by private individuals against non-consenting states." *Leitner v. Westchester Cmty. Coll.*, 779 F.3d 130, 134 (2d Cir. 2015). This applies not only when the state itself is named as a party, but also when an action is against certain state agents or instrumentalities. *Id.*

Further, "[t]here can be no dispute that DOCCS is an agency and arm of the State of New York and, therefore, entitled to New York's Eleventh Amendment immunity." *Czerwinski v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 394 F. Supp. 3d 210, 227 (N.D.N.Y. 2019).

DOCCS argues that Caballero's Fifth and Fourteenth Amendment claims must be dismissed on the basis of sovereign immunity. If those claims existed, defendant would be correct. But the Court has not gleaned any constitutional claims from plaintiff's complaint, and plaintiff has disavowed such claims himself. Defendant's motion must therefore be rejected as moot.

However, one matter concerning DOCCS's Rule 12(b)(1) motion still must be addressed. On its face, defendant's motion would appear to be just as applicable to plaintiff's ADA and Rehabilitation Act claims. After all, the Eleventh Amendment "generally bars suits" in federal court, a proscription that is not limited to constitutional claims. *Leitner*, 779 F.3d at 134. Although defendant did not move to dismiss any of plaintiff's other claims on

10

this basis, the Court has an independent duty to dismiss claims over which it lacks subject matter jurisdiction. *Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont*, 565 F.3d 56, 62 (2d Cir. 2009).

Nevertheless, several courts have held that DOCCS has waived its sovereign immunity against Rehabilitation Act claims through New York's acceptance of federal funds on its behalf. *Matagrano v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 2020 WL 7338586, at *11 n.18 (N.D.N.Y. Dec. 14, 2020).

Similarly, although a much more involved and individualized question, this Court recently held in a nearly identical case that Congress validly abrogated DOCCS's sovereign immunity for ADA claims, and it can think of no compelling reason the same would not hold true in this one. *Goodall v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 9:19-CV-1359, Dkt. No. 91. Although the Court cannot make definitive a holding to that effect here in the absence of briefing, it is nevertheless satisfied of its jurisdiction over plaintiff's claims at this juncture.

## B. Caballero's ADA and Rehabilitation Act Claims

Setting aside DOCCS's jurisdictional arguments, defendant also attacks the sufficiency of Caballero's claims. In particular, defendant argues that plaintiff has failed to properly allege that he was actually disabled at any point. Plaintiff has marshaled two claims of disability, each relevant for two

11

of his counts. Both of plaintiff's disability discrimination claims arising out of his exclusion from Shock turn on his PTSD and depression. Conversely, plaintiff's disability discrimination claims arising out of his exclusion from CASAT stem from his anal dysplasia.

### 1. **PTSD and Depression**

Concerning Caballero's Shock claims, DOCCS posits that plaintiff has not sufficiently alleged that either his PTSD or his depression substantially limit a major life activity. Accordingly, defendant argues that he has failed to allege that he is disabled within the meaning of the ADA or Rehabilitation Act

The Supreme Court has articulated a three-step test to determine whether an individual is disabled under both the ADA and the Rehabilitation Act. *Laface v. Eatern Suffolk BOCES*, 2020 WL 2489774, at *9 (E.D.N.Y. May 14, 2020) (citing *Bragdon v. Abbott*, 524 U.S. 624, 631 (1998)). First, a plaintiff must establish that he suffers from a physical or mental impairment. *Id.* If he does so, he must then point to a major life activity limited by that impairment. *Id.* Last, he must successfully allege that his impairment substantially limits that major life activity. *Id.*

DOCCS attacks Caballero's complaint for failing to establish that his PTSD and depression meet those three requirements. Taking plaintiff's allegations as true, though, that argument must be rejected. First, the ADA's

governing regulations expressly include "post-traumatic stress disorder" as an example of a mental impairment that "substantially limits brain function." 28 C.F.R. § 35.108(d)(2)(iii)(K). Plaintiff has therefore plausibly alleged that his PTSD is a mental impairment as the ADA and Rehabilitation Act define that term. Compl. ¶ 62.

Second, the ADA defines major life activities to include caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working. 42 U.S.C. § 12102(2)(A). Because Caballero has alleged that his PTSD limits his ability to sleep and concentrate, he has established that he suffers from a mental impairment that limits a major life activity. Compl. ¶ 68.

Third, again, the ADA's governing regulations explicitly list "post-traumatic stress disorder" as a mental impairment that "will, as a factual matter, virtually always be found to impose a substantial limitation on a major life activity." 28 C.F.R. § 35.108(d)(2)(ii)-(iii). As a result, "with respect to these types of impairments, the necessary individualized assessment should be particularly simple and straightforward." *Id.*

"An impairment does not need to prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." 28 C.F.R. § 35.108(d)(1)(v). Likewise, the

13

fact that an individual is able to mitigate his impairment does not preclude a finding of disability under the ADA. *Id.* at (d)(1)(viii) ("The determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures . . . ."); *see also* 42 U.S.C. § 12102(4)(E)(i)(I).

Rather, the text of the ADA demands that the "term 'substantially limits' . . . be construed broadly in favor of expansive coverage." 28 C.F.R. § 35.108(d)(1)(i). In other words, "'[s]ubstantially limits' is not meant to be a demanding standard." *Id.* All told, a plaintiff that establishes that his mental impairments substantially limit his ability to sleep or concentrate has met his burden, regardless of whether he is able to perform those activities on occasion or with the help of medication. *See id.* § 35.108(d)(4)(i) (noting that mitigating measures include medication).

In addition to the regulations' suggestion that PTSD qualifies as a disability, Caballero has alleged several facts that support a finding that his PTSD substantially limits his ability to sleep and concentrate. First, plaintiff has alleged that he had frequent and severe trauma-related nightmares multiple times each week. Compl. ¶ 69. In fact, despite a 200% increase in his anti-anxiety medication, plaintiff continued to experience nightmares one to two times per week. *Id.* ¶¶ 74, 77. Second, plaintiff has also alleged that he has difficulty concentrating because he is hyper-vigilant of his

surroundings, startles easily, and has intrusive thoughts and flashbacks. *Id.* ¶¶ 79-81. These allegations plausibly establish that plaintiff's PTSD substantially limits these two major life activities.

DOCCS nevertheless argues that plaintiff's claims must fail because the complaint contains no allegations as to the frequency, duration, and severity of plaintiff's issues with sleep and concentration. The Court disagrees.

As an initial matter, the text of the ADA does not require a plaintiff to plead facts as to the frequency, duration, or severity to establish that he has a qualifying disability. But even assuming that DOCCS's objections could theoretically derail Caballero's disability discrimination claims, his complaint covers every base that defendant claims is lacking. Again, plaintiff claims that he has, for years, suffered weekly nightmares that even medication does not meaningfully limit. Compl. ¶¶ 69, 74, 77-78. Those allegations involve frequency, duration, and severity. Thus, defendant's argument is meritless.

DOCCS's remaining arguments are similarly untenable. While it is true that Caballero has alleged that medication has enabled him to sleep through the night approximately five times per week, the fact that his PTSD does not entirely prevent sleep and responds to treatment does not undermine his claim. And neither the case law cited in support of defendant's motion, nor its strawman argument that nightmares are not a major life activity, are persuasive. Accordingly, plaintiff has adequately alleged that his PTSD is a

15

disability within the meaning of the ADA and the Rehabilitation Act,[3] and defendant's motion to dismiss Counts I and II must be denied.[4]

## 2. <u>Anal Dysplasia</u>

Regarding Counts III and IV, DOCCS similarly argues that Caballero does not allege sufficient facts to establish that his anal dysplasia substantially limits a major life activity. In response, plaintiff argues that his anal dysplasia interferes with working and major bodily functions, both of which are expressly named as major life activities under the ADA. *See* 42 U.S.C. § 12102(2). In the alternative, plaintiff argues that even if anal dysplasia did not impair a substantial life activity, defendant regarded him as disabled, which is sufficient to state a disability claim under the ADA and Rehabilitation Act. Because plaintiff need only prevail on one theory to survive defendant's motion to dismiss, the Court will focus on plaintiff's "regarded as" claim.

To begin, disability discrimination claims are not limited to individuals who suffer from a disability. The text of the ADA explicitly defines disability to include those "being regarded as having such an impairment." 42 U.S.C. §

---

[3] The standard for the ADA and the Rehabilitation Act is the same. *See Piligian v. Icahn Sch. of Med.*, --- F. Supp. 3d ---, 2020 WL 5758752, at *4 (S.D.N.Y. Sept. 28, 2020).

[4] Because plaintiff's PTSD qualifies as a disability to support these claims, the Court need not consider whether his depression would alternatively have qualified.

12102(3)(A).[5]  To establish a "regarded as" claim, the individual must allege that he was discriminated against due to a perceived impairment.  *Id*.  Importantly, an individual does not need to show that he suffered from an actual impairment or that the impairment substantially limited a major life activity.  *Id*.; *see also* 28 C.F.R. § 35.108 (a)(2)(iii).

In his complaint, Caballero alleges that soon after he was diagnosed with anal dysplasia, DOCCS removed him from his normal work assignment in the mess hall.  Compl. ¶92.  Similarly, on January 2, 2019, defendant denied his application to CASAT for "medical" reasons.  *Id*. ¶ 95.  When plaintiff sought additional information on the denial of his application, a counselor informed him that, "Health Services indicated that you are not medically suitable for work treatment at this time."  *Id*. ¶ 96.  Reading these allegations together, Caballero has pled sufficient facts to establish that DOCCS regarded him as disabled due to his anal dysplasia.

However, pursuant to the ADA's governing regulations, defendant still has one last chance to defeat plaintiff's prima facie case.  A public entity may rebut a plaintiff's "regarded as" claim by showing that the actual impairment, if it exists, is transitory or minor, or by showing that the perceived impairment would be transitory or minor, if it existed.  28 C.F.R.

---

[5] The standard for the ADA and the Rehabilitation Act is, once again, the same.  *See Veldran v. Brennan*, 408 F. Supp. 3d 111, 115 (E.D.N.Y. 2019) (citing 29 U.S.C. § 705(20)(B)).

§ 35.108(f)(2). "Transitory" is defined as lasting or expecting to last six months or less. *Id.*

In its opening papers, DOCCS does not address the merits of a "regarded as" claim except to opine that Caballero's allegation that his anal dysplasia was "neither temporary nor minor" is not sufficiently detailed to state a claim for relief. Further, despite plaintiff's explicit argument in favor of a "regarded as" claim in his opposition, defendant does not address a "regarded as" claim in reply. As such, defendant missed on its last chance, and plaintiff has sufficiently alleged a disability discrimination claim stemming from his anal dysplasia. *See, e.g.*, *Kopchik v. Town of E. Fishkill*, 759 F. App'x 31, 37-38 (2d Cir. 2018) (summary order) (vacating grant of motion to dismiss where plaintiff alleged head injuries qualified as disability or in the alternative defendant viewed him as disabled).

### C. Caballero's class certification

Although DOCCS has requested that the Court deny class certification, this argument is premature given the procedural posture of the case: namely, before Caballero has even asked for class certification. Accordingly, a decision on this issue will be made if a request is made.

### V. CONCLUSION

Caballero has adequately pled a claim for relief for disability discrimination stemming from his PTSD, as well as for his anal dysplasia.

Therefore, it is

ORDERED that

1. Defendant the New York State Department of Corrections and Community Supervision's motion to dismiss is DENIED; and

2. Defendant shall file and serve an answer to the First Amended Complaint on or before June 10, 2021.

IT IS SO ORDERED.

Dated:  May 20, 2021
   Utica, New York.

David N. Hurd
U.S. District Judge