UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
JONAS CABALLERO, on behalf of himself
and all others similarly situated,

        *Plaintiffs*,

v.                             No. 9:20-cv-1470

NEW YORK STATE DEPARTMENT OF
CORRECTIONS AND COMMUNITY
SUPERVISION,

        *Defendant*.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:               OF COUNSEL:

KAUFMAN LIEB LEBOWITZ     DOUGLAS E. LIEB, ESQ.
   & FRICK LLP             ALISON FRICK, ESQ.
*Attorneys for Plaintiffs*      SAMUEL BARR, ESQ.
18 E. 48th St.
New York, NY 10017

HON. LETITIA JAMES         STEVE H. NGUYEN, ESQ.
Attorney General for the      Ass't Attorney General
   State of New York
*Attorneys for Defendant*
The Capitol
Albany, New York 12224

DAVID N. HURD
United States District Judge

**<u>MEMORANDUM-DECISION and ORDER</u>**

## I.    __INTRODUCTION__

Plaintiff Jonas Caballero ("Caballero" or "plaintiff") moves to certify this case as a class action for purposes of liability pursuant to Federal Rules of Civil Procedure ("Rule") 23(b)(3) and 23(c)(4).  Plaintiff's underlying claims relate to an allegedly discriminatory policy maintained by defendant New York State Department of Corrections and Community Supervision ("DOCCS" or "defendant") deeming inmates with psychological disabilities "unsuitable" for the Shock Incarceration Program ("Shock"), an earned early release program.  Plaintiff claims defendant relied on this policy to bar he and thousands of others (together with Caballero, the "putative class") from Shock on the basis of their disabilities.  According to plaintiff, defendant's exclusionary policy foreclosed the possibility for members of the putative class to earn early release from prison.

Specifically, Caballero claims that DOCCS categorically excluded otherwise eligible inmates from Shock based on their mental health service level, as designated by the New York State Office of Mental Health ("OMH").  Thus, defendant deemed the putative class, who were designated OMH Level 3—meaning they suffered from moderate mental disorders requiring psychoactive medication—"unsuitable" for Shock without individualized consideration.

Caballero moves to certify the putative class and DOCCS opposes. The motion has been fully briefed and the Court now considers it on the basis of the parties' submissions without oral argument.

## II.    <u>BACKGROUND</u>

Shock is a six-month boot-camp-style program that stresses a structured routine of discipline, regimentation, exercise, and work therapy while also providing substance abuse treatment, education, and life skills counseling to prison inmates. Dkt. No. 18, Amended Complaint ("Compl.") ¶ 15; N.Y. Corr. Law § 865; Dkt. No. 72-1 (Nguyen Decl.) at 58, 62-63.[1] According to DOCCS' Supervising Offender Rehabilitation Coordinator Thomas L. Leid ("SORC Leid"), "[n]o other treatment program at DOCCS offers the same intensive instruction in military bearing and courtesy, drills, and physical exercise." Dkt. No. 72-2 (Leid Decl.) ¶ 19.

Until recently, DOCCS administered Shock at two prisons: Lakeview Shock Incarceration Correctional Facility ("Lakeview"), a minimum-security prison for both men and women, and Moriah Shock Incarceration Correctional Facility, a minimum-security prison for men that closed in March 2022. Dkt. No. 67-17 (Directive No. 0086) § II.

---

[1] Pagination corresponds with CM/ECF.

For an inmate to be Shock-eligible, they must be under age 50, cannot have committed a violent felony offense or certain other offenses, and must be within three years of their expected release date. N.Y. Corr. Law § 865(1). To enroll, inmates are either sentenced to Shock by their court of conviction or, more often, they apply to a selection committee, which then advises the Acting Commissioner of DOCCS as to whether the applicant would be appropriate for the program. Dkt. Nos. 67-7 (Shock Screening Manual) at 3; 67-8 (2020 Report on Shock) tbls. 7, 8, 12. Upon completion of Shock, an incarcerated individual becomes immediately eligible for release from prison. N.Y. Corr. Law § 867(4); 9 N.Y.C.R.R. § 8010.2.

DOCCS classifies the mental health needs of all incarcerated individuals on a numerical scale from Level 1 (most serious) to Level 6 (least serious). Dkt. No. 67-9 (DOCCS Mental Health Descriptions) at 3. Based on an inmate's mental health classification, defendant has implemented additional policies and criteria, separate from the statutory eligibility requirements, to further determine whether an applicant would be suitable for Shock. Directive No. 0086. According to Caballero, this separate criteria excludes statutorily eligible individuals from Shock if they are deemed to have a classification of OMH Level 1 (a "major mental disorder"), OMH Level 2 (a "major mental disorder," but "not as acute" as Level 1), or OMH Level 3 (a "moderate mental disorder" or "in remission from a disorder" and

administered medication to manage their condition).  *Id.*; Dkt. No. 67-6, (Leid Tr.) at 11-12, 18; Shock Screening Manual at 4.

From 2017 through 2020, this screening process led to DOCCS excluding approximately 2,482 individuals based on their mental health classification. Dkt. No. 67-10, (Table of Eligible Cases); Dkt. No. 67-11 (DOCCS AIs) ¶ 2. Caballero, designated OMH Level 3, was one of the inmates defendant excluded.  As justification for excluding these inmates from Shock, defendant has claimed that neither Lakeview nor Moriah were "Level 3" facilities, meaning they did not maintain the medical staff necessary to oversee treatment of OMH Level 3 individuals.  Dkt. No. 67-14 (Gueye Tr.) at 32, 50-53, 66.

During Caballero's proposed class period, DOCCS allowed individuals designated at OMH Levels 1–3 to participate in alternative programs to Shock only if they had been sentenced to Shock by their court of conviction. Leid Tr. at 16; 67-15 (Rodriguez Tr.) at 2-4.  For alternative programs, defendant would enroll these individuals into either the first six-month phase of its Comprehensive Alcohol and Substance Abuse Treatment program ("CASAT") or its Alcohol and Substance Abuse Treatment Program ("ASAT"). Dkt. No. 67-16 (2/20/20 McKoy Memo).

Once an inmate completed an alternative program, DOCCS would release them into the community as if they had completed Shock.  2/20/20 McKoy

Memo. However, defendant did not provide non-court-ordered inmates an alternative to Shock or a comparable option. Leid Tr. at 126-27. Thus, Caballero asserts that defendant discriminated against mentally disabled individuals who were not court-ordered to Shock or an alternative program because it failed to offer them a similar pathway to early release.

On July 29, 2021, DOCCS issued a revised Directive 0086 indicating that it would no longer deem inmates designated OMH Level 3 unsuitable for Shock. Dkt. No. 67-17 (Revised Directive No. 0086). In line with this directive, on November 3, 2021, defendant ceased to categorically exclude OMH Level 3 inmates from Shock. On that date, "Lakeview became an OMH Level 3" facility, *i.e.*, a facility capable of caring for Level 3 individuals. Dkt. No. 67-18 (DOCCS 2nd AIs) at 2. The same day, defendant circulated a memorandum to all deputy superintendents for program services, stating that, "[e]ffective immediately, Lakeview [Shock Incarceration Correctional Facility] is accepting . . . level 3 OMH participants." Dkt. No 67-19 (11/3/21 Memorandum) at 1. Moreover, and in contrast with the revised Directive 0086, the November 3, 2021 memorandum stated that anyone deemed unsuitable because of their OMH level—whether court-ordered or not—was "to be placed at an alternative site regardless of court-ordered status." *Id*.

Caballero commenced this action on December 2, 2020, asserting claims under the Rehabilitation Act ("RA") and Title II of the Americans with

Disabilities Act ("ADA").  Dkt. No. 1 (Complaint).  On March 15, 2021,

plaintiff amended his complaint.  *See generally* Compl.  DOCCS moved to

dismiss on March 29, 2021, which the Court denied on May 20, 2021.

Dkt. Nos. 21, 26.

Caballero now moves under Rules 23(b)(3) and 23(c)(4) to certify a class,

for purposes of liability only, on behalf of all persons who: (a) were

incarcerated in DOCCS custody; (b) DOCCS excluded from Shock on the basis

that they were designated OMH Level 3 at any time between December 2,

2017, and November 3, 2021; (c) were not judicially ordered to be enrolled in

Shock by their sentencing court; (d) were statutorily eligible to enroll in

Shock; and (e) DOCCS did not offer an alternative six-month pathway to

early release from prison.

### III.  LEGAL STANDARD

"The party seeking class certification bears the burden of establishing by a

preponderance of the evidence that each of Rule 23's requirements has been

met."  *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010).

Rule 23(a) contains four explicit prerequisites to class certification:

(1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of

representation.  *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 538 (2d

Cir. 2016).  Rule 23 also requires a party to satisfy at least one of three

additional subsections.  *Brown v. Kelly*, 609 F.3d 467, 476 (2d Cir. 2010).

Relevant here, Rule 23(b)(3) requires two additional elements—
"predominance" and "superiority." *Id.* For these elements, a party must
establish that "the questions of law or fact common to class members
predominate over any questions affecting only individual members, and that
a class action is superior to other available methods for fairly and efficiently
adjudicating the controversy." *Id.* (citing Rule 23(b)(3)).

Moreover, Rule 23(c)(4) provides that "an action may be brought or
maintained as a class action with respect to particular issues." Under this
provision, courts may "certify a class as to liability regardless of whether the
claim as a whole satisfies Rule 23(b)(3)'s predominance requirement," and
"may employ this technique to separate the issue of liability from damages."
*In re Nassau Cnty. Strip Search Cases*, 461 F.3d 219, 227 (2d Cir. 2006).

District courts have broad discretion in resolving issues of class
certification. *See Sumitomo Copper Litig. v. Credit Lyonnais Rouse, Ltd.*, 262
F.3d 134, 139 (2d Cir. 2001) (collecting cases and noting that the district
court is often in the "best position to assess the propriety of the class"). "Rule
23 is given liberal rather than restrictive construction, and courts are to
adopt a standard of flexibility . . ." *Marisol A. v. Giuliani*, 126 F.3d 372, 377
(2d Cir. 1997) (citation omitted). Consequently, "[d]oubts about whether Rule
23 has been satisfied should be resolved in favor of certification." *Hamelin v.
Faxton-St. Luke's Healthcare*, 274 F.R.D. 385, 392 (N.D.N.Y. 2011).

IV.    **DISCUSSION**

In opposing class certification, DOCCS concedes that Caballero has

satisfied Rule 23(a)'s requirements, as well as the "superiority" requirement,

and the Court finds that plaintiff has established each by a preponderance of

the evidence.  The parties' dispute focuses solely on the "predominance"

requirement, which plaintiff has also established.

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes

are sufficiently cohesive to warrant adjudication by representation." *Moore v.*

*PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002) (citing *Amchem Prods.,*

*Inc. v. Windsor*, 521 U.S. 591, 623 (1997)).  It is a more demanding criterion

than the commonality inquiry under Rule 23(a).  *Id*.  "Class-wide issues

predominate if resolution of some of the legal or factual questions that qualify

each class member's case as a genuine controversy can be achieved through

generalized proof, and if these particular issues are more substantial than

the issues subject only to individualized proof." *Id*. (citing *In re Visa*

*Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001)).

Where, as here, a plaintiff seeks to certify a class as to liability only,

courts focus their predominance inquiry on whether common *liability* issues

predominate over individualized *liability* issues.  *See Nassau Cnty*, 461 F.3d

at 227 (holding that the district court abused its discretion when it failed to

certify liability class even though class members had individualized

damages).  Stated another way, courts should ignore any individualized damages issues when assessing predominance for purposes of a proposed liability class.  *See Jacob v. Duane Reade, Inc.*, 602 F. App'x 3, 7 (2d Cir. 2015) (holding that the district court properly concluded that predominance was satisfied as to liability alone despite individualized nature of damages inquiry) (summary order).

Upon review, Caballero has established that some of the legal and factual questions as to liability can be achieved through generalized proof and that these issues are more substantial than the issues subject to individualized proof.  Specifically, plaintiff lists three liability issues that it argues are "overwhelmingly if not exclusively common": (i) whether the class members are disabled within the meaning of federal law; (ii) whether DOCCS maintained a uniform policy of excluding these individuals from a program, service, or benefit; and (iii) whether DOCCS has any valid defenses related to this exclusionary policy.

Each of these questions concerning DOCCS' ultimate liability have common answers.  For instance, defendant's Rule 30(b)(6) witness admitted that defendant perceived inmates at OMH Level 3 to be impaired and thus that they were "disabled" under federal law.  Gueye Tr. at 60-61 (explaining that OMH Level 3 means "a moderate diagnosis like depressive disorder" that "will affect [the inmate's] functioning"); *see also id.* at 55 (agreeing that

inmates who are prescribed psychotropic medications, *i.e.*, people who are OMH Level 3, have a mental health condition that impacts major life activities).  Additionally, as discussed further *infra*, defendant admitted in its answers to interrogatories that it deemed 2,482 inmates unsuitable for Shock based on their OMH Level.  DOCCS AIs ¶ 2.

DOCCS' affirmative defenses for this policy also turn on common evidence. Most notably, defendant claims that it could not have admitted OMH Level 3 inmates to Shock because Lakeview did not have the necessary medical supervision.  However, as Caballero notes, defendant has since changed its policy to house OMH Level 3 inmates at the facility.  Gueye Tr. at 32, 50-63, 66.

In response, DOCCS argues that Caballero has not met his burden because four individual questions predominate over any common issues: (i) whether each individual was already excluded for unsuitability prior to defendant's consideration of their OMH level; (ii) whether these individuals met the "essential eligibility requirements" to participate in Shock; (iii) whether individuals requested any reasonable accommodations and how defendant responded to these requests; and (iv) whether the individuals exhausted their administrative remedies under the Prison Litigation Reform Act (the "PLRA").  The Court disagrees that answering these questions requires individualized proof.

As to the first question, DOCCS claims that class-wide issues do not predominate because Caballero would need to show individualized proof of each member's screening history to satisfy the third element of his ADA/RA claims and establish that defendant excluded individuals from Shock based on their OMH Level.[2]  But defendant's answers to interrogatories, DOCCS AIs ¶ 2, coupled with the Table of Eligible Cases, which lists a total of 2,482 inmates defendant deemed unsuitable for Shock based on their OMH Level, bely the notion that it may have excluded the listed inmates from Shock for reasons other than their OMH Level.  Indeed, in response to plaintiff's interrogatory calling for defendant to identify individuals who it "excluded from Shock on the basis that they were classified as [OMH] level 1, 2, or 3" and/or "on the basis of mental health," defendant produced a spreadsheet of inmates, Dkt. 67-12, and represented that it listed "2,482 [people who] were deemed unsuitable based upon their respective OMH Level."  DOCCS AIs ¶ 2.  Thus, the third element of plaintiff's ADA and RA claims can be resolved through generalized proof.[3]

---

[2] To prevail on a claim under the ADA or RA, a plaintiff must establish: (1) that he is a "qualified individual" with a disability; (2) that he was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to his disability.  *Hargrave v. Vermont*, 340 F.3d 27, 34-35 (2d Cir. 2003).

[3] Defendant's declaration from SORC Leid, its Rule 30(b)(6) witness, *see* Leid Decl., does nothing to change this.  The declaration discusses a manual screening process that Offender Rehabilitation Coordinators ("ORCs") conduct for Shock applicants and the numerous factors that ORCs consider when screening.  *Id.* ¶¶ 7-8.  But the Spreadsheet lists people who defendant had already deemed unsuitable for Shock at the earlier, automated screening stage.  DOCCS AIs ¶ 2.  Thus, the excluded

12

Next, DOCCS argues that this case will require individualized proof that each member has met the "essential eligibility requirements" (*i.e.*, certain physical fitness standards) to participate in Shock.  In defendant's view, proof of class members' physical fitness is necessary to determine whether they are "qualified individuals" with a disability.[4]

DOCCS notes that Shock requires "a minimum level of physical fitness," which this court has recently recognized is "part and parcel" of the program. *See Raymond v. New York State Dep't of Corr. & Cmty. Supervision*, 579 F. Supp. 3d 327, 344 (N.D.N.Y. 2022).  While this may be true, defendant cites no regulation or policy *requiring* individuals to be physically fit to gain admission to Shock.  Instead, defendant cites to the Shock suitability manual, which states that the program involves physical exercise and training, Nguyen Decl. at 58, 62-63, and to SORC Leid, for his opinion that the program is unique, Leid Decl. ¶ 19.  But neither establishes that there is an "essential" fitness-related "eligibility requirement" through which defendant deems individuals suitable for Shock.  And although the Shock statute explains that the program "shall provide rigorous physical activity," N.Y.

---

individuals in the Spreadsheet never reached the manual stage, and it appears defendant excluded them before ever making any individual assessment.  And, as noted, defendant verified in its interrogatory responses that it excluded the individuals listed in the Spreadsheet "on the basis" that they were OMH Level 3.

[4] To be a "qualified individual" under the ADA or RA, one must meet "the essential eligibility requirements" for a program with or without the benefit of reasonable accommodations.  42 U.S.C. § 12131(2); *see also Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009).

Corr. Law § 865(2), its definition of "[e]ligible incarcerated individual" is silent on physical fitness requirements, *id*. § 865(1).

DOCCS has also failed to produce any evidence reflecting the number of people it has denied admission to Shock for fitness-related reasons. Without this information, there is little reason to believe individual fitness-related issues will predominate over common issues in this litigation—particularly because the available evidence suggests that the proportion of Shock-eligible inmates whose physical condition may impact their ability to participate in the program is miniscule. *See* Dkt. 67-4, Ex. F (reflecting that there have been only 944 exclusions from Shock for *all* medical reasons—not just physical fitness-related reasons—out of 37,664 eligible individuals screened for the program between 2017-2020).

The third issue DOCCS raises, which concerns individuals' accommodation requests, is similarly unpersuasive for the predominance inquiry. Defendant argues that the class members' "accommodation experiences" are "highly individualized" and cannot be answered without specific proof. But this argument overlooks the nature of Caballero's claim. Plaintiff does not seek to demonstrate that defendant made thousands of accommodation decisions. Rather, he alleges that defendant failed to provide all OMH Level 3 individuals access to the Shock program that it offers to court-ordered individuals with the same disabilities. Compl. ¶¶ 119, 126.

14

This denial concerns a general policy of denying reasonable accommodations to similarly situated inmates, not individual decisions, and can be achieved with generalized proof.[5]

Finally, DOCCS argues that Caballero failed to exhaust his available administrative remedies under the PLRA, and that class-wide exhaustion of administrative remedies would elude generalized proof. But since plaintiff was not incarcerated by the time he filed this lawsuit, it is unclear if the PLRA, which states that *inmates* must exhaust administrative remedies before bringing an action as to prison conditions, *see* 42 U.S.C. § 1997e(a), even applies. However, even if the PLRA does apply, the exhaustion requirement is satisfied in the class action context "as long as at least one member of the proposed prisoner class has exhausted applicable remedies." *Barfield v. Cook*, 2019 WL 3562021, at *7 (D. Conn. Aug. 6, 2019); *see also Butler v. Suffolk Cnty.*, 289 F.R.D. 80, 97 (E.D.N.Y. 2013) (collecting cases). The question is simply whether a single class member has exhausted administrative remedies, which can be answered by generalized proof.

Construing Rule 23(b) liberally in favor of class certification, Caballero has established by a preponderance of the evidence that some of the legal and

---

[5] Notably, plaintiff also asserts a second theory of liability, one concerning disparate treatment, that is wholly separate from his failure to accommodate claim. Thus, even if inmates' individual accommodation requests impacted class certification on plaintiff's reasonable accommodation claim, they would not influence certification for his disparate treatment claim.

factual questions as to liability can be achieved through generalized proof and that these issues are more substantial than those subject to individualized proof.  Plaintiff has also satisfied Rule 23(a)'s requirements and Rule 23(b)'s "superiority" requirement, which DOCCS does not dispute. Accordingly, class certification is appropriate.

## V.    <u>CONCLUSION</u>

Therefore, it is

ORDERED that

1.  Plaintiff's motion for class certification is GRANTED;

2.  Plaintiff's claims are certified as a Rule 23(b)(3) class action on behalf of a class defined as all persons who: (a) were incarcerated in DOCCS custody; (b) DOCCS excluded from Shock on the basis that they were designated OMH Level 3 at any time between December 2, 2017, and November 3, 2021; (c) were not judicially ordered to be enrolled in Shock by their sentencing court; (d) were statutorily eligible to enroll in Shock; and (e) DOCCS did not offer an alternative six-month pathway to early release from prison.

3.  Named plaintiff Jonas Caballero is appointed as class plaintiff;

4.  The law firm of Kaufman Lieb Lebowitz & Frick LLP is appointed as class counsel.

IT IS SO ORDERED.

Dated: May 1, 2023
Utica, New York

David N. Hurd
U.S. District Judge