UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JONAS CABALLERO, on behalf of
himself and all others similarly situated,

        Plaintiff,

    -v-                       9:20-CV-1470

NEW YORK STATE DEPARTMENT
OF CORRECTIONS AND
COMMUNITY SUPERVISION,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                OF COUNSEL:

KAUFMAN LIEB                                DOUGLAS EDWARD LIEB, ESQ.
   LEBOWITZ & FRICK LLP                     ALISON E. FRICK, ESQ.
Attorneys for Plaintiff                     KYLA PERRY
18 East 48th Street, Suite 802                 SIMMONS MAGUN, ESQ.
New York, NY 10017

HON. LETITIA JAMES                          ADRIENNE J. KERWIN, ESQ.
New York State Attorney General             MATTHEW GALLAGHER, ESQ.
Attorneys for Defendants                    Ass't Attorneys General
The Capitol
Albany, NY 12224

DAVID N. HURD
United States District Judge

**DECISION and ORDER**

## I. INTRODUCTION

On December 2, 2020, plaintiff Jonas Caballero ("Caballero" or "plaintiff") filed this disability-discrimination class action against defendant New York State Department of Corrections and Community Supervision ("DOCCS" or "defendant") alleging violations of Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act.[1]  Dkt. No. 1.  Broadly speaking, plaintiff challenges defendant's policies governing access to a six-month accelerated or early release program for non-violent offenders known as the Shock Incarceration Program ("Shock" or the "SIP").

According to the four-count amended complaint, DOCCS automatically disqualified certain incarcerated individuals who were otherwise eligible for the Shock program—but who were not court-ordered to participate in it—on the basis of their psychological conditions; *i.e.*, they were assigned a "Level 3" mental health services classification on a scale designed by the State's Office of Mental Health ("OMH") and used by DOCCS.  Dkt. No. 18.

On October 28, 2022, Caballero moved under Rule 23(b)(3) and (c)(4) of the Federal Rules of Civil Procedure to certify a liability-only class that consisted of:

---

[1] Plaintiff initially named Acting DOCCS Commissioner Anthony J. Annucci as a defendant, Dkt. No. 1, but abandoned any claims against him when he amended his pleading, Dkt. No. 18.

- 2 -

> all persons who (1) were incarcerated in DOCCS custody; (2) were excluded from Shock on the basis that they were designated OMH Level 3 at any time between December 2, 2017, and November 3, 2021; (3) were not judicially ordered to be enrolled in Shock by their sentencing court; (4) were statutorily eligible to enroll in Shock; and (5) were not offered an alternative six-month pathway to early release from prison.

Dkt. No. 67. After briefing, plaintiff's motion to certify the Class was granted on May 1, 2023. Dkt. No. 74. At that time, the Court appointed Caballero as the named plaintiff on behalf of the Class and appointed Caballero's counsel of record as Class Counsel. *Id.*

On March 1, 2024, Caballero moved under Rule 56 of the Federal Rules of Civil Procedure seeking partial summary judgment on DOCCS's liability as to (1) Caballero's claims; and (2) the Class's claims. Dkt. No. 82. Defendant has opposed and cross-moved for partial summary judgment on the grounds that any claims for money damages under the ADA are barred by sovereign immunity. Dkt. No. 94.

The motions[2] have been fully briefed and will be decided on the basis of the submissions without oral argument.

---

[2] Plaintiff also moved to strike certain portions of a declaration submitted by defendant. Dkt. No. 96. That motion has also been fully briefed and will be resolved *infra*.

## II. BACKGROUND

### A. New York's Shock Incarceration Program

Since 1987, DOCCS has administered a six-month program called Shock or SIP. Pls.' Facts, Dkt. No. 82-1 ¶ 1. The "Shock" or "SIP" program includes substance use disorder treatment, education, pre-release counseling, and life skills counseling, and a highly structured routine of discipline, regimentation, exercise, and work. *Id.* As relevant here, a non-violent felony offender who successfully completes the six-month Shock program becomes immediately eligible for release from prison, despite having time left on their minimum prison sentence.[3] *Id.* ¶¶ 8–9.

Over the years, the New York State Legislature has repeatedly expanded access to the Shock program by loosening its eligibility requirements. Pls.' Facts ¶¶ 3–5. The current iteration of the statute limits eligibility for Shock to individuals who: (1) are under age 50; (2) are serving a sentence for a non-violent felony offense or certain burglary or robbery offenses; (3) are within three years of eligibility for release to supervision, regardless of the length of their sentence; and (4) have not served a previous sentence for violent felony offense. N.Y. CORR. LAW § 865(1).

---

[3] As defendant points out, completion of Shock *technically* only renders a person eligible for an appearance before the Board of Parole or for conditional release, depending on whether their term of incarceration was "indeterminate" or "determinate."

## B. **DOCCS's Screening Criteria**

In addition to the statutory eligibility criteria, DOCCS has established its own suitability requirements that further restrict eligibility to participate in Shock. Pls.' Facts ¶¶ 13–14, 16–17. This includes medical and mental health screening criteria. *See id.* As relevant here, each person in DOCCS custody is assigned a "level" used to designate the scope and manner of mental health services they need.[4] *Id.* ¶ 18. These "levels," which are based on a scale used by the State's Office of Mental Health Services ("OMH"), include any person who has been diagnosed with a serious mental illness, regardless of their current psychiatric condition, as well as any person who has been prescribed medication for any mental illness *See id.*

Under DOCCS Directive 0086, DOCCS automatically excluded from Shock eligibility any person with a designated OMH mental health service "level" of 1, 2, or 3. Pl.'s Facts ¶¶ 33–34. DOCCS employed a "three-stage" screening process to enforce this policy. *Id.* ¶¶ 35–38. According to DOCCS's 30(b)(6) witness, this *per se* exclusion of certain OMH-Level designees was based on DOCCS's judgment that functional limitations arising from these individuals'

---

[4] Each DOCCS facility is also assigned a mental health "level" that reflects the individuals it is equipped to house. Pl.'s Facts ¶ 19. As relevant here, the principal difference between a "level 3" facility and a "level 4 facility" is that the former can administer psychiatric medication while the latter cannot. *Id.* ¶ 24.

mental health conditions would be likely to affect their ability to succeed in the Shock program. *Id.* ¶ 31.

Caballero and the Class members were all individuals designated as OMH Level 3, which means that they have each been diagnosed with a "moderate" mental health disorder and that DOCCS has determined it will "affect [their] functioning]." Pl.'s Facts ¶¶ 25–30. In addition, many (but not all) OMH Level 3 designees are currently taking, or have previously been prescribed, psychotropic medications. *Id.* ¶ 24–28.

### C. **DOCCS's Alternative Shock Programs**

In 2009, New York enacted the Drug Law Reform Act ("DLRA"), which, as relevant here, permitted a sentencing court to *order* the enrollment of an eligible person accused of certain non-violent felony drug offenses into the Shock program. *See* Pl.'s Facts ¶ 15. As part of this enactment, the DLRA required DOCCS to implement a six-month alternative program for court-ordered Shock participants who would otherwise be excluded for medical or mental health reasons. *See id.*

To comply with the DLRA, DOCCS adopted a policy whereby it enrolled court-ordered, otherwise-ineligible Shock participants into its pre-existing substance use disorder treatment programs. Pl.'s Facts ¶ 50. DOCCS placed these "Alternative Shock" participants into two programs: men are placed into Phase I of the Comprehensive Alcohol and Substance Abuse Treatment

("CASAT") program, while women are placed into the six-month-long Alcohol and Substance Abuse ("ASAT") program.[5] *See id.* Although these programs do not usually lead to an early release, Alternative Shock participants who complete Phase I of CASAT or ASAT are treated in the same manner as if they had successfully completed the Shock program. *See id.* ¶¶ 49, 51–52.

During the class period, DOCCS maintained a policy whereby it provided an Alternative Shock program placement to court-ordered Shock participants who were designated OMH level 1, 2, or 3. Pl.'s Facts ¶ 50. However, under the challenged iteration of this policy, if a person was excluded from Shock on the basis of their OMH designation and they had *not* been court-ordered to participate in the Shock program, DOCCS did not place them into one of its Alternative Shock programs or otherwise provide them with a comparable path to early release. *Id.* ¶¶ 51–52.

### D. Named Plaintiff Caballero

As a result of this Challenged Policy, Caballero was deprived of a pathway to earn early release. Caballero is 41 years old and has been diagnosed with post-traumatic stress disorder and depression. Pl.'s Facts ¶¶ 85, 90. After his conviction on non-violent felony drug charges, Caballero was received into DOCCS custody on August 28, 2018. *Id.* ¶¶ 93–94. DOCCS designated him

---

[5] CASAT and ASAT are not the only alternatives used by DOCCS. Depending on an individual's circumstances, DOCCS has also used other alternative placements. *See* Pl.'s Facts ¶ 48.

as OMH Level 3.  *Id*. ¶ 95.  Although Caballero was statutorily eligible for the Shock program, *id*. ¶ 102, DOCCS denied him admission based on his OMH Level 3 designation, *id*. ¶ 101.  Caballero filed a grievance but did not receive a favorable redetermination.  *See id*. ¶¶ 103–108.  As a result, Caballero did not receive an opportunity to earn early release and remained incarcerated until he was released to parole on December 16, 2019.  *Id*. ¶ 111.

### E. DOCCS's Recent Changes to its Shock Policies

After this and other civil rights actions were filed, DOCCS changed how its Shock policies apply to individuals who suffer from a disability.  *See* Pls.' Facts ¶ 53.

On July 29, 2021, DOCCS issued a revised Directive 0086 that changed the medical and mental health criteria.  As relevant here, the Revised Policy no longer categorically excludes individuals with an OMH-designated mental health service Level 3.  Pl.'s Facts ¶¶ 53–54. Likewise, on November 3, 2021, DOCCS issued a memorandum that revised its policy on the availability of Alternative Shock program placements.  *Id*. ¶ 70.  This memorandum states that anyone deemed unsuitable for the regular Shock program because of

their OMH level "is to be placed at an alternative site regardless of court-ordered status." *Id.* ¶ 71.[6]

Under these revised Shock policies, Lakeview Correctional Facility, the location primarily used by DOCCS for the regular Shock program, became designated as an OMH Level 3 facility. Pl.'s Facts ¶¶ 6, 57. To make this conversion, only minor changes were necessary. *Id.* ¶¶ 58–69, 72. Lakeview began admitting OMH Level 3 individuals and permitting them to participate in the Shock program "with some accommodation." *Id.* ¶¶ 57, 72–73.

## III. **LEGAL STANDARD**

The entry of summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). An issue of fact is material for purposes of this inquiry if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a dispute of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In assessing whether there are any genuine disputes of material fact, "a court must resolve any ambiguities and draw all inferences from the facts

---

[6] In November of 2021, DOCCS also created a new Form #3316, entitled "Shock Incarceration Correctional Facility Medical Limitations Form." This form includes a list of exercises that form the physical training component of the regular Shock program and permits medical staff to indicate whether an individual should be exempted from one or more of them. Pl.'s Facts ¶ 74.

in a light most favorable to the nonmoving party." *Ward v. Stewart*, 286 F. Supp. 3d 321, 327 (N.D.N.Y. 2017) (citation omitted). Summary judgment is inappropriate where a "review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted).

## IV. DISCUSSION

Plaintiff's amended complaint asserts claims for disability discrimination on behalf of plaintiff and the Class under Title II of the ADA and Section 504 of the Rehabilitation Act (Counts One and Two).[7] Dkt. No. 18. Plaintiff has moved for summary judgment on the liability component of: (a) his individual claims; and (b) the Class's claims. Pl.'s Mem., Dkt. No. 2-2 at 6, 15.[8]

Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

Likewise, under Section 504 of the Rehabilitation Act, "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his

---

[7] In Counts Three and Four, plaintiff (on behalf of himself alone) challenges his exclusion from CASAT, the Alternative Shock program made available to court-ordered individuals. Plaintiff has not moved for summary judgment on these claims. *See* Pl.'s Mem. at 15.

[8] Pagination corresponds to CM/ECF.

disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

Disability discrimination claims under these two statutes are sufficiently similar that courts lump them together for purposes of the analysis. *See, e.g.*, *Wright v. N.Y. State Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016). In order to establish a prima facie violation, the plaintiff must show: (1) he is a qualified individual with a disability; (2) the defendant is an entity subject to the acts; (3) he was denied the opportunity to participate in or benefit from the entity's services, programs, or activities, or was otherwise discriminated against by reason of his disability. *See id.*

As an initial matter, however, DOCCS argues that any emotional distress or loss-of-liberty damages claims must be dismissed. Def.'s Mem., Dkt. No. 94-5 at 7. According to defendant, the Supreme Court recently held that emotional-distress damages are not available under the Rehabilitation Act, *id.* (citing *Cummings v. Premier Rehab Keller, PLLC*, 142 S. Ct. 1562, 1576 (2022), and, because of the substantial overlap in these disability statutes, compensatory damages are therefore unavailable under Title II of the ADA, too, Def.'s Mem. at 7–8. Further, DOCCS argues that compensatory damages are unavailable under either statute for any "loss of liberty." *Id.* at 9.

Upon review, this argument must be rejected because it sweeps a bit too broadly. As plaintiff explains, *Cummings* held only that <u>emotional-distress damages</u> were unavailable under the Rehabilitation Act. Pl.'s Reply, Dkt. No. 97 at 21. Although plaintiff acknowledges that the Second Circuit recently extended *Cummings*'s limitation on emotional-distress-damages recovery to Title II of the ADA, Dkt. No. 100 (citing *Doherty v. Bice*, 101 F.4th 169, 174 (2d Cir. 2024)), plaintiff emphasizes that consequential damages for a loss-of-liberty remain compensable even after *Cummings*. Pl.'s Reply at 23–29.

Further, Caballero argues that, at the very least, <u>nominal</u> damages (or restitution) would still be available. Pl.'s Reply at 29–30. Likewise, plaintiff points out that any argument about individual Class members' entitlement to compensatory damages is premature because the Class was only certified for purposes of <u>liability</u>. *Id.* at 30–32.

Because a review of the case law cited by Caballero broadly confirms the validity of these positions, defendant's argument vis-à-vis damages will be rejected.[9] The remaining question is whether plaintiff has established, as a matter of law, that defendant's conduct met the requisite elements.

---

[9] Defendant also argues that Eleventh Amendment sovereign immunity bars plaintiff's claims under Title II of the ADA. Def.'s Mem. at 9–14. As defendant points out, this issue raises difficult questions about whether, and under what circumstances, Congress validly abrogated state sovereign immunity. First off, a review of plaintiff's reply memorandum strongly suggests he has the better of this argument. Pl.'s Reply at 17–21. But for reasons explained *infra*, a damages trial on plaintiff's Rehabilitation Act claims would proceed regardless of the answer to this question. *Cf. Raymond v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 2024 WL 4268385 (citing *Ross v. City Univ. of N.Y.*, 211 F. Supp. 3d 518, 528 (E.D.N.Y. 2016)).

1.  **<u>Qualified Individual with a Disability</u>**

The first element the plaintiff must show is that he or she is a qualified individual with a "disability." The ADA and the Rehabilitation Act define a "disability" as (A) "a physical or mental impairment that substantially limits one or more major life activities of such an individual"; (B) "a record of such an impairment"; or (C) "being regarded as having such an impairment." 42 U.S.C. § 12102(1); 29 U.S.C. § 705(9)(B).

Although courts should be careful to distinguish between an impairment that merely *affects* a plaintiff's major life activity from one that *substantially* limits an activity, *B.C. v. Mt. Vernon Sch. Dist.*, 837 F.3d 152, 160 (2d Cir. 2016), this substantial-limitation requirement is "not an exacting one," *Woolf v. Strada*, 949 F.3d 89, 94 (2d Cir. 2020), and the bottom-line question of whether an individual's impairment actually qualifies as a disability "should not demand extensive analysis." 28 C.F.R. § 35.101(b).

Upon review, Caballero has established that he and the Class members were "disabled" under these definitions. Caballero suffers from depression and post-traumatic stress disorder that caused him to experience trouble sleeping, nightmares, and difficulty concentrating. Pl.'s Facts ¶¶ 96–100. The regulations recognize that these impairments "substantially limit[ ]" brain function and will therefore "virtually always be found to impose a

substantial limitation on major activity." 28 C.F.R. §§ 35.108(d)(2)(iii)(K), (d)(2)(ii)–(iii).[10]

The same is true of the Class members. The Class consists of individuals designated as OMH Level 3, which is defined as a person who "may need psychiatric treatment and medication for a moderate mental health disorder and/or are in remission from a disorder." Pl.'s Facts ¶ 18. In DOCCS's view, mental disorders warranting an OMH Level 3 designation are ones "that would be expected to impair [the individual's] functioning." *Id.* ¶ 30.

Likewise, Caballero has established that he and the Class members were "qualified" for the Shock program. A "qualified individual with a disability" is a person with a disability "who, with or without reasonable modifications to rules, policies, or practices, . . . meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).

The "essential eligibility requirements" of a public service or program are generally determined with reference to the regulations and policies that govern the program in question. *See, e.g.*, *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009) (examining DOCCS regulations). Importantly, though, courts

---

[10] In the alternative, Caballero qualifies as being (C) "being regarded as having such an impairment" because DOCCS's records reflect his OMH Level 3 designation. The same is true of the Class members, all of whom were designated as OMH Level 3.

must conduct an independent analysis of eligibility requirements for a public program or benefit rather than simply deferring to a set of formal eligibility requirements that an entity has imposed. *Mary Jo C. v. N.Y. State & Local Ret. Sys.*, 707 F.3d 144, 159 (2d Cir. 2013).

The eligibility requirements for the Shock program are set forth in New York Correction Law § 865(1). The record reflects that DOCCS staff screened Caballero for admission to the Shock program and denied him access based on his OMH Level 3 designation.[11] The same is true of the Class members, all of whom were designated as OMH Level 3 were therefore *per se* ineligible for Shock under the Challenged Policy.

### 2. **The Entity is Subject to the Acts**

The second element the plaintiff must show is that the defendant is an entity subject to the ADA and the Rehabilitation Act. It is well-established that DOCCS is subject to these statutes. *See, e.g.*, *Wright*, 831 F.3d at 72. In fact, the Supreme Court has explicitly held that the ADA applies to prison-

---

[11] To the extent that the ability to perform any specific physical tasks might be considered an eligibility requirement, the record is clear that performance of the physical training component of the Shock program is not "essential" for purposes of the ADA and Rehabilitation Act. First, although the statute contemplates "rigorous physical activity," the statute's eligibility criteria omit any reference to physical fitness. Compare N.Y. CORR. LAW § 865(2), with § 865(1). Second, the record reflects that DOCCS had a longstanding practice of modifying and, in some cases, eliminating the program's physical training requirements on an ad hoc basis. Third, and relatedly, DOCCS made available alternative means of receiving the same early release benefits of the Shock program to individuals who were court-ordered to participate.

based boot camp programs with criteria similar to the Shock program at issue in this litigation. *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 209 (1998).

### 3. **Denied the Benefit of the Shock Program**

The third element the plaintiff must show is that he or she was denied the opportunity to participate in or benefit from the entity's services, programs, or activities, or was discriminated against by reason of his or her disability.

Where, as here, a plaintiff presents direct evidence of discrimination, the burden of proof shifts to the defendant to show that it would have made the same decision regardless of discriminatory animus.[12] *See, e.g.*, *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985). If the defendant makes that showing, the burden is back on the plaintiff to show that discrimination was a but-for cause of the denial of benefits. *Beckhorn v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 2019 WL 234774, at \*5 (W.D.N.Y. Jan. 16, 2019).

Upon review, this showing has been met. The record demonstrates that DOCCS disqualified Caballero and the other Class members on the basis of their OMH Level 3 designation; *i.e.*, the policy expressly disqualified them on the basis of mental health status. Although DOCCS accommodated court-ordered designees with an Alternative Shock placement, DOCCS refused to

---

[12] Otherwise, the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) would apply to these claims. *See, e.g.*, *Ben-Levy v. Bloomberg, L.P.*, 518 F. App'x 17, 18 (2d Cir. 2013) (summary order).

permit non-court-ordered OMH Level 3 designees to participate in these same alternatives.

This unrebutted showing establishes that DOCCS's discrimination was sufficiently "intentional" to support a claim for damages. Although defendant insists that "intentional discrimination" requires "discriminatory animus or ill will based on disability," Def.'s Mem. at 12–13, the case law makes clear that discrimination is "intentional" when it reflects a deliberate choice to take the discriminatory act. *See, e.g.*, *Felix v. City of N.Y.*, 344 F. Supp. 3d 644, 664 (S.D.N.Y. 2018) (quoting *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 275 (2d Cir. 2009)). It is undisputed that DOCCS implemented a policy that deliberately screened out OMH level 3 designees (based on their mental health status) and refused to offer non-court-ordered Level 3 designees access to the Alternative Shock programs that would permit for an early release.

This showing also establishes, as a matter of law, that the discrimination was a but-for cause of the adverse decision. *See, e.g.*, *Doe v. Deer Mountain Day Camp*, 682 F. Supp. 2d 324, 345 (S.D.N.Y. 2010) (holding "no reasonable jury could find that [plaintiff's medical condition] was not a substantial factor—or, indeed, a but-for cause" of plaintiff's exclusion where defendants' justifications for exclusion all related to plaintiff's [medical condition]").

Notably, a public entity can demonstrate, as an affirmative defense, that modifications would fundamentally alter the nature of the program. But this

argument would fail because the evidence establishes that: (1) DOCCS could (and did) modify elements of the Shock program to accommodate other individuals; and (2) DOCCS could (and did, at least for court-ordered Shock participants) provide early release benefits under an alternative program.

In a similar vein, DOCCS argues that expansion of the Alternative Shock program to non-court-ordered individuals would impose a "substantial and undue burden" on their operations. Def.'s Mem. at 17. This argument will also be rejected. As an initial matter, plaintiff points out that this "undue burden" defense was not pleaded in the answer. Dkt. No. 27. Further, to the extent this affirmative defense has not been waived, it relies on contradictory statements by defendant's 30(b)(6) witness, who previously testified that it was possible to convert level 3 facilities with minimal changes. Pl.'s Reply at 15. Likewise, this "undue burden" argument relies principally on facts that have been introduced in the Declaration of Assistant Commissioner Rachel Young. Dkt. No. 94-3. Because Ms. Young was never disclosed as a witness in defendants' mandatory disclosures, and for substantially the reasons set out in plaintiffs' motion to strike, Dkt. No. 96, the declaration will be struck and not considered. Finally, even on the merits, this "undue burden" defense would fail for substantially the reasons set forth in plaintiff's reply. Pls.' Reply at 13 –17.

## V. **CONCLUSION**

Caballero and the Class members are entitled to summary judgment on DOCCS's liability. Because their motion will be granted, defendant's cross-motion will be denied. The parties are directed to set up a conference with U.S. Magistrate Judge Christian F. Hummel to discuss a settlement of the outstanding issues and, in the exceedingly unlikely event that this meeting fails to produce a negotiated result, to propose a joint schedule for briefing and adjudicating the remaining matters.

Therefore, it is

ORDERED that

1. Plaintiff's motion for summary judgment as to liability (Dkt. No. 82) on Counts One and Two[13] is GRANTED;

2. Defendant's cross-motion for summary judgment (Dkt. No. 94) is DENIED;

3. Plaintiff's motion to strike (Dkt. No. 96) is GRANTED;

4. The parties are directed to contact U.S. Magistrate Judge Christian F. Hummel's chambers to set up a conference to discuss a global settlement of the outstanding issues.

---

[13] As noted *supra*, plaintiff has not moved on Counts Three and Four. The record indicates that Caballero was later denied admission to CASAT for "medical" reasons. Notably, a class action that challenged DOCCS's medical screening criteria reached similar conclusions on the question of liability under the ADA and the Rehabilitation Act. *Raymond v. N.Y. State Dep't of Corr. & Cmty. Supervision*, –F. Supp. 3d–, 2024 WL 4268385 (N.D.N.Y. Sept. 19, 2024).

The Clerk of the Court is directed to terminate the pending motions.

IT IS SO ORDERED.

Dated: October 3, 2024
       Utica, New York.

David N. Hurd
U.S. District Judge