UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JONAS CABALLERO,

                        Plaintiff,                9:20-cv-01470 (BKS/PJE)

v.

NEW YORK STATE DEPARTMENT OF
CORRECTIONS AND COMMUNITY SUPERVISION,

                        Defendant.

**Appearances:**

*For Plaintiff:*
Kyla Magun
Douglas E. Lieb
Alison Frick
18 E. 48th Street, Suite 802
New York, New York 10017

*For Defendant:*
Letitia James
New York State Attorney General
Matthew J. Gallagher
Assistant Attorney General
The Capitol
Albany, New York 12224

**Hon. Brenda K. Sannes, Chief United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

**I.    INTRODUCTION**

Plaintiff Jonas Caballero brings this disability discrimination class action against Defendant New York State Department of Corrections and Community Supervision ("DOCCS") under Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act. (Dkt. No. 18). This action stems from Defendant's policies governing access

to the Shock Incarceration Program ("Shock"), a six-month accelerated or early release program for non-violent offenders. (*Id.*). Presently before the Court is Plaintiff's motion under Federal Rule of Civil Procedure 23(c)(2)(B) for approval of Plaintiff's proposed class notice and class notice plan, which includes a request that Defendant bear the cost of notice. (Dkt. No. 109). Although Defendant does not oppose Plaintiff's motion in general, it raises several objections to the proposed notice and plan. (Dkt. No. 112). For the reasons that follow, Plaintiff's motion is granted in part and denied in part.

## II.    BACKGROUND

Plaintiff filed the proposed class action complaint on December 2, 2020. (Dkt. No. 1). On March 15, 2021, Plaintiff filed an amended complaint. (Dkt. No. 18). On May 1, 2023, United States District Judge Hurd granted Plaintiff's motion for class certification, certified a liability class under Rule 23(b)(3), and defined the class as follows:

> All persons who: (a) were incarcerated in DOCCS custody; (b) DOCCS excluded from Shock on the basis that they were designated [New York State Office of Mental Health ("OMH")] Level 3 at any time between December 2, 2017, and November 3, 2021; (c) were not judicially ordered to be enrolled in Shock by their sentencing court; (d) were statutorily eligible to enroll in Shock; and (e) DOCCS did not offer an alternative six-month pathway to early release from prison.

(Dkt. No. 74, at 16).

In a status conference with United States Magistrate Judge Christian F. Hummel following class certification, Plaintiff explained that he believed motion practice should precede class notification and requested a briefing schedule for a summary judgment motion. (Text Minute Entry Dec. 1, 2023). Defendant did not object and Judge Hummel accordingly set a briefing schedule. (*Id.*).

2

On October 3, 2024, Judge Hurd granted Plaintiff's motion for summary judgment as to the liability component of both the individual Plaintiff's and the class's ADA and Rehabilitation Act claims. (Dkt. No. 101). The Court further found that emotional distress damages were unavailable under both statutes, but declined to resolve the parties' arguments regarding the availability of consequential damages for loss of liberty, nominal damages, and restitution. (*Id.* at 11–12 (citing *Cummings v. Premier Rehab Keller, PLLC*, 596 U.S. 212, 230 (2022); *Doherty v. Bice*, 101 F.4th 169, 174 (2d Cir. 2024))). On November 1, 2024, after this case was reassigned to the undersigned, (Dkt. No. 105), this Court issued a Text Order directing the parties to meet and confer regarding the formulation of a class list and notice plan, (Dkt. No. 106). On February 7, 2025, Plaintiff filed the present motion for approval of the class notice and plan. (Dkt. No. 109).

### III. STANDARD OF REVIEW

"For any class certified under Rule 23(b)(3) . . . the court must direct to class members the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). This includes "individual notice to all members who can be identified through reasonable effort." *Id.* Notice may be made by "United States mail, electronic mean, or other appropriate means," and:

> must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B)(i–vii).

## IV.   DISCUSSION

In its response to Plaintiff's proposed notice plan, (Dkt. No. 109), Defendant: (1) flags the language in the proposed class notice regarding the statute of limitations in order to clarify that it does not "warrant, affirm or subscribe to any legal statements made by class counsel in the class notice" or "waive any defenses, rights or claims," (Dkt. No. 112, at 3–4); (2) opposes "Plaintiff's proposal of using parole officers as intermediaries to give notice to class members," (*id.* at 3 n.1); (3) questions "why a Settlement Administrator is required" and asserts Plaintiff has failed to demonstrate that the proposed costs associated with an administrator are reasonable, (*id.* at 6–7); and (4) asserts that it should not be required to pay costs associated with class notice, (*id.* at 4–8). The Court addresses each issue *seriatim*.

### A.   Proposed Class Notice

Defendant's sole concern regarding the proposed class notice is the "information on tolling contained in the notices." (Dkt. No. 112, at 3–4). The proposed long form notice states:

> If you are a member of the class and you want to pursue damages for any violation of your rights, you do not need to file a lawsuit now. Because class members' claims are pending in this case, the statute of limitations (or deadline to file an action) is not running on class members' claims.

(Dkt. No. 109-4, at 4). Defendant does "not disagree with the statement on tolling in the notices," but raises the issue to "clarify" that it does not "warrant, affirm, or subscribe to any legal statements" in the proposed notice and does not waive any "defenses, rights, or claims." (Dkt. No. 112, at 4). As Defendant does not identify any basis for excluding or modifying the statement and appears to agree it is a correct statement of the law, *see American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, (1974) ("[T]he rule most consistent with federal class action procedure must be that the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been

4

permitted to continue as a class action."), the Court finds no reason for its removal from the proposed notice. The Court has reviewed the remainder Plaintiff's proposed short form and long form class notices, (Dkt. No. 109-3; Dkt. No. 109-4), and finds that they contain the information required by Rule 23(c)(2)(B)(i–vii). Accordingly, Plaintiff's proposed class notices are approved.

    B.    **Proposed Notice Plan**

        1.    **Use of Parole Officers**

Defendant objects to Plaintiff's proposed use of parole officers to facilitate notice in the event a class notice mailing is returned. (Dkt. No. 112, at 3 n.1). The proposed notice plan provides: "If an individual class member whose mailing is returned is currently on supervision, Plaintiff proposes that the Administrator resend the short form notice to the individual's parole officer with instructions to provide it to the class member." (Dkt. No. 109-1, at 5). Defendant argues that "[p]roviding litigation notices to parolees is not within a parole officer's job description and places an unnecessary burden on DOCCS' parole officers." (Dkt. No. 112, at 3 n.1). Neither party cites any authority regarding the use of parole officers to facilitate class notice, nor is the Court aware of any. Moreover, Plaintiff's proposed notice plan identifies a procedure for handling returned mailings. (*See* Dkt. No. 109-1, at 6 (" If a mailing for an individual class member is returned, the Administrator will attempt to identify a better address by using IDI skip tracing and/or manual lookups.")). Accordingly, Defendant's objection is sustained and this aspect of Plaintiff's proposed notice plan is rejected.

        2.    **Use of Class Administrator**

Defendant argues that "Plaintiff makes no showing as to why a 'Settlement Administrator' is required or appropriate for . . . class notice" and asserts that Plaintiff has not identified the proposed administrator or made any representation as to its expertise or

competency.[1] (Dkt. No. 112, at 6–7). Plaintiff has outlined a number of tasks he anticipates a class administrator undertaking in this case, including: verification of "the addresses provided by DOCCS" for the approximately 2,000 class members by "using the National Change of Address (NOCA) database and standard skip-tracing services"; resending notice to individuals (whose notices have been returned); providing class counsel with periodic updates of the status of the mailings, including the number returned and resent as well as the "number of opt outs"; and publishing "a case-specific website that will contain the long form notice in both English and Spanish" as well as the class certification and summary judgment decisions. (Dkt. No. 109-1, at 5–6 (citations omitted)). Plaintiff estimates the cost to total "between $8,000 and $10,000." (*Id.* at 10).

Plaintiff's argument for the usefulness of a class administrator appears to have some merit—indeed, it is not uncommon for courts to appoint administrators to facilitate notice in class actions. *See*, *e.g.*, *Sow v. City of New York*, No. 21-cv-00533, 2024 WL 967820, at *1, 2024 U.S. Dist. LEXIS 38488, at *4 (S.D.N.Y. Mar. 5, 2024) (appointing class administrator in class action under 42 U.S.C. § 1983 to execute proposed class settlement notice procedure); *In re Nassau Cnty. Strip Search Cases (Nassau Cnty. I)*, No. 99-cv-2844, 2009 WL 961806, at *2, 2009 U.S. Dist. LEXIS 31695, at *5–6 (E.D.N.Y. Apr. 7, 2009) (discussing tasks class administrator would perform in 42 U.S.C. § 1983 class action). However, Plaintiff fails to identify the class administrator it intends to use, including its experience and competency in administering civil rights class actions, and does not indicate whether the estimated cost includes both the cost of the class administrator and the notice procedure. The Court therefore lacks a

---

[1] Defendant refers to the proposed administrator as a "Settlement Administrator" and, as part of its objection, asserts that it is "unclear why a third-party administrator should be used" since "[t]here has been no settlement." (Dkt. No. 112, at 6). To the extent the distinction matters, the Court notes that Plaintiff is proposing the use of a "Class Action Administrator," not a "Settlement Administrator." (Dkt. No. 109-1, at 5).

meaningful basis on which to evaluate whether "the expense is consistent with the standard of providing notice 'reasonably calculated, under the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Nassau Cnty. I*, 2009 WL 961806, at *2, 2009 U.S. Dist. LEXIS 31695, at *6 (quoting Wright & Miller, 7AA Fed. Prac. & Proc. § 1786). Accordingly, Plaintiff's proposed notice plan is rejected without prejudice to renewal with additional information identifying the proposed class administrator and outlining associated costs.

    C.    **Cost of Class Notice**

Plaintiff asserts that Defendant should be required to pay for the class administrator and distribution of notice. (Dkt. No. 109-1, at 10). In support of his assertion, Plaintiff notes that Defendant's liability has already been established and it would be "unduly burdensome to require [Plaintiff] to bear the costs himself." (*Id.*). Defendant objects to bearing the costs. (Dkt. No. 112, at 4–8). Defendant acknowledges that there is some authority for shifting notice costs to defendants when liability has been determined but argues that shifting the cost in this case is unwarranted because the class was certified as to liability only and the availability of compensatory damages is in dispute. (Dkt. No. 112, at 5 (citing *Marcaz v. Transworld Sys., Inc.*, 201 F.R.D. 54, 59 (D. Conn. 2001); *In re Nassau Cnty. Strip Search Cases (Nassau Cnty. II)*, No. 99-cv-2844, 2009 WL 706252, at *2, 2009 U.S. Dist. LEXIS 21215, at *5 (E.D.N.Y. Mar. 16, 2009))).

"In general, 'a plaintiff must initially bear the cost of notice to the class,' unless there are exceptional circumstances justifying departure from the general rule." *H.W. Urban GmbH v. Republic of Argentina*, No. 02-cv-5699, 2006 WL 587333, at *2, 2006 U.S. Dist. LEXIS 9668, at *8 (S.D.N.Y. Mar. 9, 2006) (quoting *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974)); *see Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 359 (1978) (finding that in "some

7

instances" the district court could, in its discretion, shift class notice costs to the defendant but declining to "attempt to catalogue the instances in which a district court might be justified in placing the expense on the defendant," and cautioning "that courts must not stray too far from" default rule that the plaintiff should bear "all costs relating to the sending of notice"). As relevant here, courts have considered a finding of liability as to the defendant to be one instance justifying departure from the general rule. *See*, *e.g.*, *Macarz*, 201 F.R.D. at 59 (ordering the defendant to "pay for the cost of notice," noting that "liability has already been determined" and that the defendant did not "contest that it bears the cost of notice"); *Nassau Cnty. II*, 2009 WL 706252, at *2, 2009 U.S. Dist. LEXIS 21215, at *3 (finding that because the defendants "have admitted liability," it was "appropriate for the defendants to bear the cost of notice"); *see also* 3 Newberg and Rubenstein on Class Actions § 8:33 (6th ed.) (identifying "four situations" where courts have shifted notice costs to defendants, including when (1) "when costs would be substantially reduced if the defendant undertook the notice rather than the plaintiff;" (2) "when there is an existing fiduciary relationship between the parties (as in a shareholder derivative suit);" (3) "when the defendant is the party requesting certification"; and (4) "when there has been some preliminary finding of the defendant's liability (either via the granting of preliminary injunctive relief or by some other means)").

      Had Plaintiff proceeded with class notice upon certification, as contemplated by Rule 23(b)(3), there would be little question as to Plaintiff bearing the cost of such notice. *Oppenheimer*, 437 U.S. at 356. But here, the parties agreed to proceed to the summary judgment stage first, (*see* Text Minute Entry Dec. 1, 2023), which resulted in a determination that Defendant is liable under the ADA and Rehabilitation Act for disability discrimination, (Dkt. No. 101). Thus, this case is unusual in the sense that Defendant's liability has been established prior

to class notice. *See Bakov v. Consol. World Travel, Inc.*, 68 F.4th 1053, 1057 (7th Cir. 2023) (explaining that "[n]ormally, the class certification decision and the attendant notice to the class come before any decision on the defendant's liability" but that "[o]n rare occasion, however, the quirks of litigation result in situations where class certification decisions are justifiably postponed or revisited after liability has been determined" (citing Fed. R. Civ. P. 23(c)(1)(A)). There are, as Defendant points out, questions remaining as to whether damages are recoverable in this case, which has been certified as to liability only. (Dkt. No. 112, at 6). Nonetheless, under these circumstances, given the unique procedural posture of providing class notice where Defendant's liability has already been determined, the Court, in its discretion, concludes the cost of this notice is appropriately placed, in part, if not in whole, on Defendant. *See Nassau Cnty. II*, 2009 WL 706252, at *2, 2009 U.S. Dist. LEXIS 21215, at *3. However, the Court requires additional information before making any allocation.

As discussed above, Plaintiff has provided no information about the proposed class administrator in this case, including a breakdown of the cost of such administrator and the cost of notice. Accordingly, by April 25, 2025, Plaintiff shall file a status report: (1) identifying the class administrator they intend to use as well as the class administrator's credentials and experience; and (2) presenting a proposed budget for notification, including the cost of the class administrator's services, the cost of verifying address information, the costs of mailing and resending, and the cost of publication via website.[2] Defendant's objections, if any, shall be filed by May 2, 2025.

---

[2] In support of his request that the Court shift costs to Defendant, Plaintiff also asserts that it would be "unduly burdensome to require [Plaintiff] to bear the costs himself." (Dkt. No. 109-1, at 10). However, Plaintiff provides no factual details suggesting he is unable to bear the estimated notice costs. *See Oppenheimer*, 437 U.S. at 361 ("Although in some circumstances the ability of a party to bear a burden may be a consideration, the test in this respect normally should be whether the cost is substantial."). Thus, to the extent Plaintiff seeks to rely on this assertion, the status report should include factual details regarding the alleged burden.

9

## V. CONCLUSION

For these reasons, it is hereby

**ORDERED** that Plaintiff's motion for approval of class notice and notice plan (Dkt. No. 109) is **GRANTED** in part and **DENIED** in part; and it is further

**ORDERED** that Plaintiff shall file a status report by April 25, 2025: (1) identifying the class administrator they intend to use as well as the class administrator's credentials and experience; and (2) presenting a proposed budget for notification, including the cost of the class administrator's services, the cost of verifying address information, the costs of mailing and resending, and the cost of publication via website; and it is further

**ORDERED** that Defendant may file objections, if any, to Plaintiff's status report by May 2, 2025; and it is further

**ORDERED** that Defendant is directed to provide class counsel with an updated list of class members within sixty (60) days of the date of this Order.

**IT IS SO ORDERED.**

Dated: April 2, 2025
Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge